418 S.E.2d 758

**GINO'S PIZZA OF WEST HAMLIN, INC., Plaintiff Below, Appellee,**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Lori S. Evans Defendants Below, Appellants.**

No. 20084.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1992.

Decided May 15, 1992.

Charles R. Garten, Charleston, for appellants.

Mark A. Sorsaia, Hurricane, for appellee.

PER CURIAM:

This case is before the Court upon the appeal of Lori S. Evans and the West Virginia Human Rights Commission ("the Commission") from the Circuit Court of Lincoln County, which reversed the decision of the Commission. The appellant contends that the circuit court committed reversible error when it found that the order of the Commission was not supported by substantial evidence. The Commission had found that the appellee, Gino's Pizza of West Hamlin, Inc. ("Gino's") had discriminated against the complainant on the basis of her sex by terminating her employment because she rebuked the unwelcome sexual advances of her supervising manager. We reverse the

decision of the circuit court, and reinstate, in part, the decision of the Commission.

Lori Evans began working for Gino's in March, 1982. She was employed as a cook/cashier/waitress until she quit in mid–1983. Ms. Evans was rehired to the same position in December, 1983 and continued in that position until May 17, 1985. Ms. Evans contends she was terminated by Gino's the following day; Gino's contends Ms. Evans effectively quit on May 17, 1985.

Ms. Evans filed a complaint with the Commission alleging that she had been subjected to abusive behavior and sexual harassment from her manager. After a hearing was conducted, the hearing examiner issued a proposed order, which was thereafter adopted (with minor amendments) by the Commission.

The appellant testified before the hearing examiner that she had resided with the manager and his wife (also an employee of Gino's) and their two children for four to six weeks beginning in December, 1984. She alleged that the manager made sexual advances to her on two occasions while she resided with him, and although she rebuked him on both occasions, she felt compelled to move out immediately thereafter.

Appellant further testified that the manager resumed making sexual advances three and one-half months later (in mid-April, 1985) during work shifts when they were alone together.[1] Appellant contended that the manager frequently (six or seven times per work shift) tried to touch her, and often made suggestive comments to her; however, when she made it clear that she would not submit to his advances,[2] the manager became increasingly critical of her work performance. Appellant did not discuss the sexual harassment with any other person until May 18, 1985.[3] The manager never explicitly threatened appel-

lant with the loss of her job for failing to submit to the advances.

On May 15, 1985 appellant sought out the area supervisor of Gino's and informed him that her manager had been unduly critical of her work in front of customers. He agreed such criticism was unwarranted, and advised her to take the following day off, which she did.

On May 17, 1985 the manager again criticized appellant in front of customers. She immediately left work although her shift had not ended. She attempted to return to work the following day, but was informed by the manager that she was no longer employed.

The manager denied ever touching or making sexually suggestive comments of any kind. He further denied being overly critical of appellant's work performance.[4] A co-employee, Judy Goddard, testified that she had not noticed the manager criticizing appellant in front of customers. The area supervisor acknowledged that appellant was given the day off on May 16, 1985, but stated she never informed him that the manager was being critical of her work, only that she was "nervous." He did not inquire as to why she was nervous.

The Commission found that appellant was terminated for rejecting the unwelcome sexual advances of her manager, largely on the basis of the perceived demeanor of appellant as compared to her manager, and on the basis of inconsistencies in the testimony of the witnesses for appellee. Most significantly the Commission found that the manager could not adequately explain what he meant when he stated on a company reprimand form (filed at the time appellant's employment was terminated) that complainant could not get along with others. The manager testified that he had the impression that complain-

---

1. It was stipulated by the parties that Ms. Evans and her manager worked alone together once or twice a week during this period.

2. At one point claimant slapped the manager in order to ward off his advances.

3. By her own admission, appellant did not inform anyone else of the harassment until after

she realized she was no longer employed by appellee. At that point she informed her father that she had been sexually harassed.

4. The manager testified that appellant was a good worker (as did her co-worker, Ms. Goddard), but was sometimes moody.

ant and Ms. Goddard occasionally were not speaking to each other, but he never asked why or got involved. Beyond those instances, he testified, the two got along fine. He also testified that complainant did not get along with his wife (who was also employed by Gino's), although he admitted that, during the time period in question, complainant did not work with his wife.[5] The Commission noted that appellant's testimony also contained inconsistencies, but found that they were minor and related only to time.

As part of its cease and desist order, the Commission awarded the complainant $5,000 for "humiliation, embarrassment, · emotional and mental distress and the loss of personhood and dignity," resultant from the alleged discriminatory treatment. The Commission ordered that complainant be reinstated to her former position, and awarded her back wages.[6] The Commission also awarded the complainant attorney's fees in the amount of $4,950.00 and costs in the amount of $474.40.

Appellee appealed to the Circuit Court of Lincoln County pursuant to *W.Va.Code*, 29A–5–4 [1964]. The circuit court reversed the Commission in regard to the sexual harassment finding, and, therefore, denied all relief.

The reasoning for the reversal of the Commission's order was contained in the circuit court's order:

[T]he Court does hereby hold that the findings of the Human Rights Commission in this case is [sic] not supported by substantial evidence as defined in the

cases of *Westmoreland Coal Co. vs. WVHRC and Shirley A. Boone* [181 W.Va. 382 S.E.2d 562 (1989) ] and *Bishop Coal Co. vs. Slayers* [sic] [181 W.Va. 71, 380 S.E.2d 238]. After a review of the record, the court finds that the Appellee, Lori S. Evans, made no complaints to no other parties, including her relatives, co-workers, immediate superiors, or to any other person in support of her claim of sexual harassment, made by her immediate supervisor, James Watts. An examination of the record finds that there was absolutely no testimony upon which Ms. Evans' allegations of sexual harassment could be corroborated. I do further find that to charge an employer with such an award and the award not being based upon substantial evidence would be a miscarriage of justice.

■ We articulated the standard for "quid pro quo" sexual harassment claims in syllabus point 1 of *Westmoreland Coal Co. v. Human Rights Commission*, 181 W.Va. 368, 382 S.E.2d 562 (1989):

In order to prove 'quid pro quo' sexual harassment at the workplace, the complainant must prove: (1) that the complainant belongs to a protected class; (2) that the complainant was subject to an unwelcome sexual advance by an employer, or an agent of the employer who appears to have the authority to influence vital job decisions; and (3) the complainant's reaction to the advancement was expressly or impliedly linked by the employer or the employer's agent to tangible aspects of employment.[7]

---

5. The Commission also noted that the manager testified that appellant phoned him twice after walking out May 17, yet his reprimand write-up does not reflect those calls. Furthermore, the Commission interpreted Ms. Goddard's recollection of the events of May 17 as contradicting the manager and supporting appellant. Ms. Goddard testified that she never had any problems with the appellant.

6. Appellant's back wages were to be calculated in the amount of $120.75 per week multiplied by the number of weeks since the date of complainant's termination up to the date of her reinstatement. This amount was to be offset by $500.00 complainant earned in the interim. The final amount was to include 10% interest per annum until paid.

7. In footnote 3 of *Westmoreland,* 181 W.Va. at 371, 382 S.E.2d at 565, we stated:

There are two recognized forms of sexual harassment in the workplace. The first form of sexual harassment involves an employee who is consistently subjected to sexual innuendo or contact, thereby creating a hostile environment for employment. The second form of sexual harassment involves an employer or agent of the employer demanding sexual consideration in exchange for job benefits, so-called 'quid pro quo' harassment. For either type of sexual harassment to be actionable, the harassment must be sufficiently severe or pervasive. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49, 59–60 (1986).

By virtue of the facts as found by the Commission, appellant has met all three criteria outlined by *Westmoreland.* First, as a woman, she is a member of a protected class. Second, the manager, an agent of the employer who had authority to influence vital job decisions (such as termination), made unwelcome sexual advances to appellant. Third, by undeservedly criticizing appellant's work performance and terminating her employment as a response to her rebukes of the manager's sexual advances, appellant's reaction to the sexual advancement was impliedly linked by the employer's agent to tangible aspects of employment.

■ The most important assignment of error made by the appellant is the assertion that the circuit court erred in ruling that the findings of fact of the Commission were not supported by substantial evidence.[8] The general rule in this jurisdiction was stated in syl. pt. 1 of *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981): "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties."

■ The principal issue before this Court is whether the circuit court erred by finding the Commission's order unsupported by substantial evidence. In syllabus point 2 of *Shepherdstown Volunteer Fire Dep't v.*

*State ex rel. State Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983), we stated:

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

In this case the circuit court ruled that because appellant did not complain of the harassment to any other person, and because no other person witnessed the harassment, the Commission's findings of fact were not supported by substantial evidence. This ruling misinterprets our law concerning substantial evidence.

---

It should be noted that the *Meritor* court declined to address the full extent of employer liability in "hostile environment" cases.

**8.** Appellant also contends that the trial court erred in denying her motion to dismiss appellee's appeal from the Commission's order for lack of jurisdiction. Appellant contends that *W.Va.Code,* 5–11–11 [1987] was in effect at the time the appeal was filed. That provision was amended in March, 1987 to give jurisdiction for appeals from decisions of the Human Rights Commission (with some inapplicable exceptions) to the Supreme Court. The provision specifically states that appeal to the Supreme Court is the exclusive remedy for cases filed after April 1, 1987. This case was filed with the Circuit Court of Lincoln County on May 19, 1987. However, the *Acts of the Legislature, Extraordinary Session 1986, Regular Session 1987*

notes that the amendment was passed on March 14, 1987 and was not to take effect for ninety days. Apparently, in order to clear the confusion created by these contrary statements of legislative intent, the West Virginia legislature again amended *W.Va.Code,* 5–11–11 in 1989, stating, in pertinent part:

[A]ppeals filed erroneously in the circuit court after the first day of April, one thousand nine hundred eighty-seven, and prior to the first day of July, one thousand nine hundred eighty-nine, may be prosecuted in the supreme court of appeals without regard to the time limits specified herein[.]

Because the instant appeal is appropriately before us on either the appeal of the appellant or the appellee, the error cited is both harmless and moot.

We articulated the "extremely limited scope of review" permitted of a court reviewing administrative decisions or orders under *W.Va.Code*, 29A–5–4(g)(5) [1964] in *Frank's Shoe Store v. W.Va. Human Rights Commission*, 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986). We stated:

[A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985).

. . . .

Pursuant to *W.Va.Code*, 29A–5–4(g)(5) [1964], the rejection of administrative findings is sanctioned only when 'an order of an administrative body based upon a finding of facts ... is contrary to the evidence, or is not supported by the evidence, or is based upon a mistake of law, ...' *Guine v. Civil Service Commission*, 149 W.Va. 461, 469, 141 S.E.2d 364, 369 (1965). Otherwise, if in reviewing administrative decisions or orders in contested cases, the courts routinely substitute their judgments for those of the agencies, the utility of administrative adjudication would be lost. A. Neely, *Administrative Law in West Virginia* § 5.57 at 438 (1982).

■ In this case the reviewing court did not make a finding that the Commission's ruling was "clearly wrong," and indeed, under the evidence presented, could not do so. We have never suggested, as does the circuit court, that to succeed in a sexual harassment proceeding, a complainant must produce witnesses to the harassment or must disclose the harassment to others during the immediate time period surrounding its occurrence. By its very nature, sexual harassment rarely occurs in plain view, and victims of sexual harassment, fearing reprisals, are reluctant to disclose it. The appellant presented evidence that she had been the victim of sexual harassment and that her employment had been terminated in response to her rebuke of the sexual harassment. The appellee denied committing any sexual harassment. The Commission found the testimony of the appellant credible and the testimony of the appellee incredible due to major inconsistencies in the testimony of appellee's witnesses. The Commission cannot be said to have been "clearly wrong," and its ruling was supported by substantial evidence.[9] Therefore, we reverse the October 17, 1990, order of the Circuit Court of Lincoln County. To rule otherwise would be to sanction the simple substitution of the reviewing court's judgment for that of the administrative agency, thereby losing the utility of the administrative adjudication. *Frank's Shoe Store, supra.*

■ However, as appellee correctly argues, the Commission exceeded its authority when it awarded appellant $5,000.00 for compensatory damages for humiliation, embarrassment, emotional and mental distress and the loss of personhood and dignity as a result of appellee's discriminatory treatment. In syllabus point 2 of *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989), we stated:

Our original authorization in *Human Rights Commission v. Pearlman Rlty. Agcy.*, 161 W.Va. 1, 239 S.E.2d 145 (1977) of damages for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity, contemplated only 'incidental' awards. We approved $1,000 as an incidental award for such damages. That figure may be adjusted for inflation, but the Commission must be aware of its jurisdictional limitations because awarding a higher amount im-

---

**9.** It should be noted that in *Harper v. State Workmen's Compensation Comm'r*, 160 W.Va. 364, 369, 234 S.E.2d 779, 782 (1977), we reviewed the meaning of "common evidentiary standards." We stated, "[t]he term 'substantial evidence' is used in the Social Security Act, where it has been held to mean '... more than a scintilla, but less than preponderance.' *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir.1964)." In this case, there was clearly more than a "scintilla" of evidence and it was error for the trial court to reverse the Commission.

pinges upon a defendant's constitutional right to trial by jury.

We noted in *Bishop Coal* that: "Allowing for an adjustment to that amount [$1,000.00] for inflation, the Commission today is authorized to award up to $2,500 in damages, but absolutely no more other than to make adjustments from time to time to conform to the consumers' price index." 181 W.Va. at 79, 380 S.E.2d at 246–47. Therefore, the $5,000.00 awarded by the Commission as compensatory damages must be reduced to $2,500.00. This reduction conforms with our law allowing the Commission to award only incidental damages.

■ Appellee contends that an award of any amount, inclusive of back pay and attorney fees, beyond $2,500.00, violates its right to trial by jury pursuant to *W.Va.Constitution* art. III, § 13. We disagree. We expounded at great length the rationale behind the constitutionality of an award for back pay, incidental damages and attorney fees by the Human Rights Commission in *Bishop Coal Co. v. Salyers, supra.* We decline to depart from the precedent established by *Bishop Coal.* Furthermore, an award of back pay is specifically authorized by *W.Va.Code,* 5–11–10 [1987].[10]

■ In this case the Commission ordered the claimant reinstated to her former position and awarded her back pay until reinstatement occurred. The Commission found that the appellant had mitigated her losses by looking for work and had worked for a limited time earning $500.00. However, because of the great length of time which has passed since the Commission's order of February 19, 1987, and the lack of any record or testimony concerning claimant's attempts at mitigation beyond the September 19, 1986 hearing before the hearing examiner, we will remand this case for evidence of claimant's employment or attempts at mitigation beyond September 19, 1986. She is to be awarded back pay until reinstated, minus any amount of mitigation. Evidence is also to be adduced as to appellant's reasonable attorney fees beyond February 19, 1987, and such reasonable attorney fees are to be awarded. Damages shall be assessed with 10% interest per annum added.

This case is reversed and remanded for ruling and proceedings consistent with this opinion.

Reversed and remanded.

NEELY, J., dissents and would affirm the trial judge.

---

**10.** *W.Va.Code,* 5–11–10 [1987] states, in pertinent part:

    If, after such hearing and consideration of all of the testimony, evidence and record in the case, the commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as de-

fined in this article, the commission shall issue and cause to be served on such respondent an order to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay[.]