508 S.E.2d 111

Thomas S. CLARK, M.D., Appellant,

v.

WEST VIRGINIA BOARD OF
MEDICINE, Appellee.

Thomas S. CLARK, M.D., Appellee,

v.

WEST VIRGINIA BOARD OF
MEDICINE, Appellant.

Nos. 23789, 23790.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 14, 1998.

Decided July 17, 1998.

Andrew G. Fusco, Esq., Jeffrey A. Ray, Esq., Fusco & Newbraugh, L.C., Morgantown, West Virginia, and Franklin D. Cleckley, Esq., Morgantown, West Virginia, Attorneys for Thomas S. Clark, M.D.

Deborah Lewis Rodecker, Esq., Charleston, West Virginia, Attorney for West Virginia Board of Medicine.

MAYNARD, Justice:

The cross appellants in this case, Dr. Thomas S. Clark and the West Virginia Board of Medicine (Board), appeal from the May 31, 1995 order of the Circuit Court of Monongalia County, West Virginia. The circuit court's order modified the Board's order revoking Dr. Clark's license to practice medicine and surgery in the State of West Virginia and instead ordered that Dr. Clark's medical license be suspended for six months and that Dr. Clark receive a public reprimand. Dr. Clark requests that the lower court's order mandating suspension be reversed. The Board requests that its order mandating revocation be reinstated. These cases have been consolidated on appeal. We believe the circuit court correctly decided the issues but erred in concluding that only statutory sanctions could be considered when the administrative order was appealed. We are remanding this case for the circuit judge to impose community service as a sanction, as the judge originally desired.[1] Accordingly, we affirm in part, reverse in part, and remand this case to the circuit court to enter an order consistent with this opinion.

## I.

## FACTS

Dr. Clark was a member of the West Virginia Board of Medicine from 1987 to 1992. In January 1992, the Executive Director of the Board (Director), Ronald Walton, received an anonymous letter which alleged Dr. Thomas S. Clark had abused drugs and had received treatment for the abuse. In February 1992, Walton, along with an investigator from the United States Drug Enforcement Administration (DEA) and a Board investigator, met with Dr. Clark and his attorney. At the meeting, the participants discussed the January 1992 letter, a 1990 DEA report showing Dr. Clark had

---

1. The trial judge stated in his memorandum opinion that community service was an appropriate sanction for Dr. Clark's "indiscretions and refusal to follow the rules," but the judge also stated that option was not available to the court as a possible penalty.

been ordering Demerol, a Schedule II controlled substance, and information obtained from a Ripley pharmacy showing that Dr. Clark obtained Demerol in 1990.

At the meeting, Dr. Clark voluntarily disclosed that he had received treatment for the abuse of Demerol in 1987 at the Mayo Clinic in Rochester, Minnesota. However, Dr. Clark refused to consent to the release of his treatment records which were maintained by the Mayo Clinic.[2] Dr. Clark explained he had provided the Demerol to a patient, but that he had no records of the patient's visits or injections. He also explained that the Demerol he had obtained in Ripley was for use at the Ravenswood Aluminum Company clinic, that the Demerol had not been used, rather, it had been flushed down the toilet with no witnesses present. Following the meeting, Dr. Clark resigned as a member of the Board.

The Board served subpoenas upon Dr. Clark, requesting copies of documents. Some of the subpoenaed items were located and sent to the Board. However, Dr. Clark did not have a daily record or log of dispensed Schedule II controlled substances. The subpoenas were not signed by a member of the Board, as is authorized by W.Va.Code § 30–3–7(a)(2); rather, Walton's secretary signed the name of the President of the Board.

Dr. Clark was invited to appear before the Board's complaint committee four times, once in June, July, August, and September 1993. He declined to appear each time due to the unavailability of his attorney. Finally, a hearing was held before a hearing examiner in the Board offices on April 12–14, 1994, pursuant to a complaint filed in October 1993 by the Board.

Of the charges levied against Dr. Clark, the hearing examiner found that Dr. Clark had committed fraud on both the 1987 and 1989 renewal applications; that Dr. Clark failed to keep adequate medical records for one patient; that as the result of his failure to keep adequate medical records, Dr. Clark prescribed Demerol other than in good faith

and in a therapeutic manner; that Dr. Clark failed to keep a log of dispensed Schedule II controlled substances as well as order forms and destruction forms for controlled substances; that Dr. Clark engaged in unprofessional, dishonorable, and unethical conduct to the extent he was found to have committed the above violations; and that Dr. Clark violated the public trust. The hearing examiner stated that "[t]he other allegations [excluding fraud] would not themselves be sufficient to justify the revocation of the respondent's medical license." Based on the finding of fraud, the hearing examiner recommended that Dr. Clark's license to practice medicine and surgery be revoked.

On September 16, 1994, the Board issued its final order, which approved the recommendations of the hearing examiner with the following modifications and enhancements. The Board agreed Dr. Clark failed to maintain any record or log of dispensed Schedule II controlled substances, but found this was not a violation of federal law because Dr. Clark did not regularly engage in the dispensing of controlled substances or charge for his services or for the substances dispensed. The Board agreed Dr. Clark failed to keep written records justifying the course of treatment of a patient, but added the word "complete" before "written records." The Board found contrary to the hearing examiner with regard to the issue of whether Dr. Clark knew or should have known he was violating federal laws; the Board found it was under no obligation to prove knowledge on the part of Dr. Clark and that Dr. Clark violated state law regardless of his knowledge of federal law. The Board also found that Dr. Clark violated federal record keeping regulations. The Board's order revoked Dr. Clark's medical license.

Dr. Clark obtained a stay of the Board's order in September 1994 and appealed the order to circuit court. Following a review of the administrative decision, the circuit court issued a well-reasoned, fair and persuasive memorandum opinion. A copy of the court's

---

**2.** The Board filed a lawsuit in the federal district court in Minnesota seeking the release of Dr. Clark's treatment records. The court granted Dr. Clark summary judgment. The Board's appeal to the Eighth Circuit Court of Appeals was eventually dropped.

memorandum opinion is attached as an Appendix to this opinion.

After carefully reviewing the record and considering the arguments and briefs submitted by both sides, the circuit court ordered that the Board's order be modified to provide for suspension of Dr. Clark's license to practice medicine and surgery for six months and a public reprimand. It is from this order that both Dr. Clark and the Board appeal to this Court.

## II.

### STANDARDS OF REVIEW

■■■ W.Va.Code § 30–3–14(k) (1989) provides for judicial review of an administrative ruling, by stating in pertinent part: "Any person against whom disciplinary action is taken pursuant to the provisions of this article has the right to judicial review as provided in articles five and six [§§ 29A–5–1 et seq. and 29A–6–1 et seq.], chapter twenty-nine-a of this code." When an administrative ruling is appealed to the circuit court, the standard of review is stated in Syllabus Point 1, *HCCRA v. Boone Memorial Hospital,* 196 W.Va. 326, 472 S.E.2d 411 (1996), as follows:

" 'Upon judicial review of a contested case under the West Virginia Administrative Procedure[s] Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." ' Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983)." Syllabus Point 1, *St. Mary's Hospital v. State Health Planning and Development Agency,* 178 W.Va. 792, 364 S.E.2d 805 (1987).

This Court further explained in *Boone Memorial Hospital,* 196 W.Va. at 335, 472 S.E.2d at 420, that "[u]nder the Administrative Procedures Act, 'the task of the circuit court is to determine "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Frymier–Halloran v. Paige,* 193 W.Va. 687, 695, 458 S.E.2d 780, 788 (1995) *quoting Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 153 (1971)."

The right to appeal an adverse decision of the circuit court to this Court is provided in W.Va.Code § 29A–6–1 (1964), which states:

Any party adversely affected by the final judgment of the circuit court under this chapter may seek review thereof by appeal to the supreme court of appeals of this state, and jurisdiction is hereby conferred upon such court to hear and entertain such appeals upon application made therefor in the manner and within the time provided by law for civil appeals generally.

This Court articulated the standard of review on appeal by stating, "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*" Syllabus Point 2, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

These standards were summarized by this Court in *Martin v. Randolph County Board of Education,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995), which states, "This Court reviews decisions of the circuit under the same standard as that by which the circuit [court] reviews the decision of the ALJ.... We review *de novo* the conclusions of law and application of law to the facts."

### III.

### DISCUSSION

On appeal, both sides, the Board and Dr. Clark, assign numerous errors. We find that the two central assignments of error that determine the outcome of this case are the two issues with which the trial court dealt, that is, the fraud issue and the medical records issue. We believe the circuit court reached the correct decision as to each of these issues; therefore, we affirm the court's ruling on these issues. As we believe the other errors assigned by the parties have no merit, we do not consider them.

■ We pause here because we wish to comment on one issue. We note that the practice of allowing the secretary of the Executive Director of the Board to sign subpoenas is not the practice contemplated by statute. W.Va.Code § 30–3–7(a)(2) (1980) states in pertinent part, "The board may . . . subpoena witnesses and documents[.]" 11 C.S.R. § 3.16.1 (1989) provides, "The president or his or her designee shall have the power to issue subpoenas or subpoenas duces tecum pursuant to the provisions set forth in West Virginia Code subsection (b), section one, article five, chapter twenty-nine-a." The President of the Board is limited as to whom he or she may designate to issue subpoenas when he or she chooses not to sign the subpoenas. W.Va.Code § 29A–5–1(b) (1964) provides guidance and states in pertinent part:

> For the purpose of conducting a hearing in any contested case, any agency which now has or may be hereafter expressly granted by statute the power to issue subpoenas or subpoenas duces tecum or any member of the body which comprises such agency may exercise such power in the name of the agency. Any such agency or any member of the body which comprises any such agency may exercise such power in the name of the agency for any party upon request. Under no circumstances shall this chapter be construed as granting the power to issue subpoenas or subpoenas duces tecum to any agency or to any member of the body of any agency which does

not now by statute expressly have such power.

As the Board is granted statutory authority to issue subpoenas, clearly the preferred practice is for the President to personally sign all subpoenas, and when that is not possible or practicable, then the better practice is to designate a member of the Board rather than the investigator's secretary to sign subpoenas.

### The Fraud Issue

■ The Board charged Dr. Clark with fraudulently completing the 1987 and 1989 Applications for Biennial Registration of License to Practice Medicine and Surgery in the State of West Virginia because Dr. Clark failed to report that he had entered a drug treatment program. In fact, Dr. Clark answered "no" on both applications when asked, "During the last registration period, have you been addicted to or received treatment for narcotic or alcohol dependency?" The first application in question covered the time period from July 1, 1985 to June 30, 1987. On June 1, 1987, Dr. Clark signed and dated the second application which covered the time period of July 1, 1987 to June 30, 1989. The Board stated that the failure by Dr. Clark to report drug treatment on the application forms "constitute[d] a violation of West Virginia Code § 30–3–14(c)(1), (17), and 11 CSR 1A 12.1(a), renewing a license to practice medicine by fraudulent misrepresentation, for which violation the Respondent may be disciplined by the Petitioner." The hearing examiner agreed with the Board that Dr. Clark "renewed his license to practice medicine by fraudulent misrepresentation[.]" The Board adopted this finding.

Dr. Clark appealed to the circuit court, which found "the West Virginia Board of Medicine ("Board") was in error when it found that Dr. Thomas Clark ("Dr. Clark") renewed his license to practice medicine by fraudulent misrepresentation in 1987 and 1989." The court concluded Dr. Clark was not compelled by law to report his drug treatment on the applications. The court reasoned that the hearing examiner focused on the drug treatment Dr. Clark received in the spring or summer of 1987, which oc-

curred after the application for biennial registration had been filed, and that Dr. Clark did not falsely answer the question on either application. In reversing the administrative decision, the trial court stated:

> [T]he Board was in error when it found that Dr. Clark renewed his license to practice medicine by fraudulent misrepresentation in 1987 and 1989. . . . The Court also holds that the revocation of Dr. Clark's medical license is clearly unwarranted based upon a proper application of the law to the facts of this case.

\* \* \* \* \* \*

By choosing to receive drug treatment during the month of June, 1987, Dr. Clark may have been incredibly lucky, because that was the only time period outside the scope of his answers on the 1987 application for license renewal, or he may have received some very good legal advice. Or, as most of us suspect, he premeditatedly planned to be treated in June, 1987—after submitting his application on June 1, 1987, to avoid disclosing his disease. Obliqueness, however, is not fraud.

While we do not condone Dr. Clark's "obliqueness" and certainly the better practice would have been full disclosure, we also recognize that Dr. Clark self-reported his problem and sought treatment on his own. This is the type of conduct we wish to encourage. We have no desire to place a chilling effect upon professionals who wish to self-report and seek help when they realize they have a problem. We also note that Dr. Clark has been practicing medicine for more than ten years since he voluntarily sought treatment and he has had no other reported complaints or problems during that entire period to date.

The hearing examiner wrongly determined that Dr. Clark had a duty to supplement his answers on the application forms. The hearing examiner failed to cite any law to justify this conclusion. Simply put, there did not exist in the law at that time a duty to supplement.[3] The trial court stated that perhaps Dr. Clark had a moral duty to supplement, but the court was not sitting as a moral court. The trial court correctly ruled on this *de novo* question of law that Dr. Clark did not have a duty to supplement. We affirm this ruling.

### The Medical Records Issue

The Board charged Dr. Clark with failing to maintain medical records as to his care and treatment of a patient he regularly injected with Demerol, thereby violating W.Va. Code §§ 30–3–14(c)(11) and (17) and 11 C.S.R. § 1A.12.1(u). The hearing examiner found that the documents submitted by Dr. Clark contained inconsistencies and inaccuracies and that no records were submitted "which showed a consistent chronology justifying his course of treatment of the patient and setting forth a record of examinations and treatments rendered."

The Board also charged Dr. Clark with ordering Demerol and Dexedrene from various suppliers without maintaining any record or log of dispensed Schedule II substances, thereby violating W.Va.Code § 30–3–14(c)(17) and 11 C.S.R. §§ 1A.12.1(e), (j), 12.2(h), and 11 C.S.R. §§ 5.9.3 and 11. The Board charged Dr. Clark with disposing and destroying Demerol in such a way that he violated 21 C.F.R. § 1307.21(a)(2), W.Va. Code § 30–3–14(c)(17), and 11 C.S.R. §§ 1A.12.1(o) and (bb). The hearing examiner concluded that the record supported the allegation that the respondent prescribed and injected Demerol without keeping written records and that the respondent failed to maintain any record or log of dispensed Schedule II controlled substances. The Board found Dr. Clark failed to maintain proper and adequate medical records. When appealed to the circuit court, the court concluded "that the Board properly found that

---

**3.** The biennial registration form was modified in 1991 to expressly state that a duty to supplement exists. The warning that was then added to the form states:

> *REMEMBER,* REGARDLESS OF THE DATE OF YOUR SIGNATURE, YOUR STATEMENTS ABOVE RELATE TO THE ENTIRE PERIOD JULY 1, 1989, TO JUNE 30, 1991. IF, AFTER YOU SIGN AND DATE THIS FORM, AND PRIOR TO JULY 1, 1991, ANY ANSWER SHOULD CHANGE FOR ANY REASON, YOU HAVE A DUTY TO NOTIFY THE BOARD AND AMEND YOUR FORM.

Dr. Clark failed to maintain proper and adequate medical records." There is no showing this conclusion was clearly wrong. The trial court properly affirmed the Board's order on this issue; therefore, we affirm the ruling of the trial court.

### Sanctions

■ As stated earlier, we believe the circuit court erred in determining it could not sanction Dr. Clark by requiring that he perform community service. The court stated it best in its memorandum opinion when it said:

A more difficult issue is what is the appropriate punishment for Dr. Clark.... If I had the right to do so, considering society's needs, Dr. Clark would be ordered to give a generous amount of his time providing free medical care for the downtrodden. That he should devote his knowledge and talents to service public needs in atonement for his indiscretions and refusal to follow the rules seems to be fair and to fit the conduct condemned by the Board.

Unfortunately, the court determined that option was not available. As we will discuss below, we believe the option of community service was available to the court. We are, therefore, reversing and remanding this case to the circuit court to impose community service as a sanction upon Dr. Clark. Of course, of necessity the length and type of community service to be performed by Dr. Clark will be determined by the Board of Medicine.

We agree with the circuit court that the disciplinary measures listed in W.Va.Code § 30–3–14(i) (1989), to which the court re-ferred, do not provide for community service.[4] However, the Board's legislative rules grant the Board authority to require a doctor to provide free public or charitable service when the Board finds a doctor should be disciplined. The sanctions the Board may impose are found in 11 C.S.R. § 1A.12.3 (1994), which states:

12.3. When the Board finds that any applicant is unqualified to be granted a license or finds that any licensee should be disciplined pursuant to the West Virginia Medical Practice Act or rules of the Board, the Board may take any one or more of the following actions:

a. Refuse to grant a license to an applicant;

b. Administer a public reprimand;

c. Suspend, limit or restrict any license for a definite period, not to exceed five (5) years;

d. Require any licensee to participate in a program of education prescribed by the Board;

e. Revoke any license;

f. Require the licensee to submit to care, counseling or treatment by physicians or other professional persons;

g. Assess a civil fine of between $1,000 and $10,000 and/or assess cost of the Board's investigation and administrative proceedings against the licensee;

h. Require him or her to practice under the direction or supervision of another practitioner or

i. *Require the licensee to provide a period of free public or charitable service.*

In addition to and in conjunction with these actions, the Board may make a finding adverse to the licensee or applicant, but withhold imposition of judgment and

---

**4.** W.Va.Code § 30–3–14(i) (1989) states:

(i) Whenever it finds any person unqualified because of any of the grounds set forth in subsection (c) of this section, the board may enter an order imposing one or more of the following:

(1) Deny his application for a license or other authorization to practice medicine and surgery or podiatry;

(2) Administer a public reprimand;

(3) Suspend, limit or restrict his license or other authorization to practice medicine and surgery or podiatry for not more than five years, including limiting the practice of such person to, or by the exclusion of, one or more areas of practice, including limitations on practice privileges;

(4) Revoke his license or other authorization to practice medicine and surgery or podiatry or to prescribe or dispense controlled substances;

(5) Require him to submit to care, counseling or treatment designated by the board as a condition for initial or continued licensure or renewal of licensure or other authorization to practice medicine and surgery or podiatry;

(6) Require him to participate in a program of education prescribed by the board;

(7) Require him to practice under the direction of a physician or podiatrist designated by the board for a specified period of time; and

(8) Assess a civil fine of not less than one thousand dollars nor more than ten thousand dollars.

penalty, or it may impose the judgement [sic] and penalty but suspend enforcement of penalty and place the physician or podiatrist on probation, which probation may be vacated upon noncompliance with such reasonable terms as the Board may impose. In its discretion, the Board may restore and reissue a license to practice medicine or podiatry issued under the West Virginia Medical Practice Act or any antecedent law, and as a condition thereof, it may impose any disciplinary or corrective measure provided for in this Rule or in the West Virginia Medical Practice Act. (Emphasis added).

W.Va.Code § 29A–1–2(d) (1982) states, in pertinent part, "Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has ... the force of law[.]" This Court has previously said that rules adopted pursuant to the State Administrative Procedures Act, W.Va.Code §§ 29A–1–1 to 29A–7–4, "have the force and effect of law." *State ex rel. Kincaid v. Parsons,* 191 W.Va. 608, 610, 447 S.E.2d 543, 545 (1994); *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981); *Reed v. Hansbarger,* 173 W.Va. 258, 314 S.E.2d 616 (1984); *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995). *See also* Syllabus Point 2, *HCCRA v. Boone Memorial Hospital,* 196 W.Va. 326, 472 S.E.2d 411 (1996).

Neither party in the case *sub judice* questions whether the rules adopted by the West Virginia Board of Medicine and approved by the Legislature were properly formulated. Both sides seem to take for granted that the rules were properly adopted and ratified. Therefore, these legislative rules have the force and effect of law. When the case was reviewed by the circuit court, the judge determined he could not impose community service as a disciplinary measure. Because legislative rules have the force and effect of law, we believe any disciplinary sanction the Board is authorized to levy by rule is also available to the circuit court. Therefore, we hold that when the circuit court finds the rights of a petitioner have been prejudiced because of one of the six reasons set forth in

W.Va.Code § 29A–5–4(g) and the court exercises its discretion to reverse, modify or vacate the ruling of the West Virginia Board of Medicine, then any disciplinary sanction the Board of Medicine is authorized to levy pursuant to legislative rule or statute is also available to the circuit court. In lieu of the license suspension, the circuit court had the power to consider and impose the sanctions included in 11 C.S.R. § 1A.12.3 (1994), including community service which involves free public or charitable service, along with the sanctions included in W.Va.Code § 30–3–14(i) (1989).

In conclusion, we find the circuit court correctly decided each issue with which it was confronted but erred in determining it could only impose statutory sanctions upon Dr. Clark. Therefore, we affirm in part, reverse in part, and remand this case to the circuit court to impose, in lieu of suspension, the sanction of community service which is provided for in the legislative rules and the public reprimand. The court is directed to enter an order consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.

STARCHER, J., deeming himself disqualified, did not participate in the decision in this case.

THOMAS W. STEPTOE, Jr., Judge, sitting by special assignment.

## APPENDIX

### IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

THOMAS S. CLARK, M.D., PETITIONER V. WEST VIRGINIA BOARD OF MEDICINE, RESPONDENT

CIVIL ACTION NO. 94–C–AP–72

### *MEMORANDUM OPINION*

Dr. Thomas S. Clark (Dr. Clark) has appealed a Final Order of the West Virginia Board of Medicine (Board) dated the 12th day of September 1994. The Board's Order revoked Dr. Clark's license to practice medicine and surgery in the State of West Virginia.

This opinion concludes that the Board was in error when it found that Dr. Clark renewed his license to practice medicine by fraudulent misrepresentation in 1987 and 1989. The Court finds that the Board properly found that Dr. Clark failed to maintain proper and adequate medical records. The Court also holds that the revocation of Dr. Clark's medical license is clearly unwarranted based upon a proper application of the law to the facts of this case.

The Procedures for Appeals of Decisions by Administrative Agencies are governed by the State Administrative Procedures Act, W.Va.Code, 29A–1–1 et seq. [1964].

Upon judicial review of a contested case under the Administrative Procedure Act, a circuit court may affirm the order or decision of the agency, or remand the case for further proceedings. W.Va.Code, 29A–5–4(g). This Court can only reverse, vacate or modify the order or decision of the Board if substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. W.Va.Code, 29A–5–4(g). See Syl. pt. 2 *Shepardstown [sic] Volunteer Fire Department v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

A circuit court reviewing an administrative decision or order under W. Va.Code, 29A–5–4(g)(5) [1964], is permitted an "extremely limited scope of review." *Gino's Pizza of W. Hamlin v. WVHRC*, 187 W.Va. 312, 317, 418 S.E.2d 758 (1992). On this point, the Court said in *Frank's Shoe Store v. W.Va. Human Rights Commission*, 179 W.Va. 53, 56, 365 S.E.2d 251, 254 [1986]:

[A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. *Anderson v. City of Bessemer*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985).

Since this is just a trial court opinion and enough trees have already been devoured for the mountains of paper filed in this matter, I will not repeat the charges in the Complaint or all of the recommended decisions of the Hearing Examiner as modified and adopted by the Board, or all of the arguments of counsel. If an issue raised on appeal is not discussed in this Opinion, counsel is to conclude (however disappointing this may be), that I have found the argument to be without merit.

In light of this Court's limited power of review and the record reviewed by the Court, this appeal turns on the Board's Findings and Conclusions on these two issues:

(1) Did Dr. Clark commit fraud on his renewal applications?

and

(2) Were proper and adequate medical records maintained by Dr. Clark?

The answer to question (1) is "no"; the answer to question (2) is "no".

## I.

### THE FRAUD ISSUE

The Board based its decision on a mistake of law and was clearly wrong when it concluded that:

It has been clearly and convincingly demonstrated that the respondent renewed his license to practice medicine by fraudulent misrepresentation in 1987 and in 1989 as charged in the Board's complaint in violation of West Virginia Code sec. 30–3–14(c)(1), (17) and 11 CSR 1A 12.1(a).

It is the conclusion of this Court that:

Dr. Clark was not compelled by law to report his June 1987 drug treatment on his

1987 and 1989 applications for biennial registration of license to practice medicine and surgery in the State of West Virginia and he did not renew his license to practice medicine by fraudulent misrepresentation.

## DISCUSSION

On June 1, 1987, Dr. Clark signed and dated an application for biennial registration of license to practice medicine and surgery for the period of July 1, 1987, to June 30, 1989. The Board had the right to deny Dr. Clark's license to practice medicine if he was guilty of fraudulent misrepresentation. W.Va.Code 30–3–14(c)(1), (17). The heart of the Board's fraudulent misrepresentation finding against Dr. Clark is found in his "no" answer to question 6, "During the last registration period have you ... been addicted to or received treatment for narcotic or alcohol dependency." The last registration period referred to in the question was July 1, 1985 to June 30, 1987.

Although the Hearing Examiner found that Dr. Clark became addicted to Demerol in 1987, there was no finding that Dr. Clark had been addicted to narcotic or alcohol dependency from July 1, 1985 to June 30, 1987. Instead, the Hearing Examiner focused on the treatment Dr. Clark received in the spring-summer of 1987 and the Hearing Examiner's contention that Dr. Clark had a responsibility to report his drug treatment even though the Hearing Examiner found that the treatment occurred after the application for biennial registration had been filed.

It is critical in the consideration of this issue to remember that we are not asking whether Dr. Clark's actions were reprehensible. It is fraud that is being charged here— not reprehensible behavior. Dr. Clark did not lie in answer to any of the questions on his 1987 Renewal Application. That fact is not disputed. But, according to the Hearing Examiner's mistaken view of the law, which was adopted by the Board, Dr. Clark had a legal duty to supplement his answers on the 1987 Application. Most people would agree that Dr. Clark had a moral duty to do that. I have no doubt about that. He also had a

duty to his patients and to the medical community to educate them about his disease. That he did not do so is a negative reflection on his strength of soul. But the Board does not sit a board of morality—legal precepts must govern the Board's conclusions of law. There was no law in 1987—no statute—no regulation—no case law—requiring Dr. Clark to bring the Board up to date on his personal problem.

The law must be followed. The Board cannot end a medical career by the spinning of words into theories which are then called facts. If loopholes in the law are used and abused, legislative bodies change the law. And that is what the Board did (or tried to do) in 1991 when it changed its application form to require practitioners to supplement application forms.

The Hearing Examiner and the Board also found that when Dr. Clark, on his application for biennial registration for the period July 1, 1989 to June 30, 1991, answered "No" to question No. 8, "During the last registration period [July 1, 1987 to June 30, 1989], have you been addicted to or received treatment for any chemical substance or alcohol dependency," he gave a false answer.

To reach this conclusion, the Hearing Examiner relied upon the testimony of Ellen Starkey, a licensed clinical social worker, who formerly worked with Dr. Clark. Ms. Starkey testified that Dr. Clark returned from treatment on July 3rd. However, on cross examination, Ms. Starkey said that the reason she testified that Dr. Clark returned from a drug treatment on July 3, 1987, was because that was the day he got off the plane and came to the office. But, Ms. Starkey then admitted that she did not know the date Dr. Clark terminated his treatment. It is not easy to define exactly what is meant by the burden of proof standard "clear and convincing evidence"—but I do know that the Hearing Examiner clearly didn't have clear and convincing evidence on this determinative fact.

By choosing to receive drug treatment during the month of June, 1987, Dr. Clark may have been incredibly lucky, because that was the only time period outside the scope of his answers on the 1987 application for li-

cense renewal, or he may have received some very good legal advice. Or, as most of us suspect, he premeditatedly planned to be treated in June, 1987—after submitting his application on June 1, 1987, to avoid disclosing his disease. Obliqueness, however, is not fraud.

Dr. Clark's actions were not right—because he, at the very least, violated the spirit of the law. Fair enough. But, the charge is fraud—not right or wrong—not candor or obliqueness—and fraud was not proven by clear and convincing evidence.

## II.

### WHAT DR. CLARK DID AND DID NOT DO

There is clear and convincing evidence that Dr. Clark was undeniably wrong in several respects.

Dr. Clark:

1. Failed to keep a separate daily log or record of dispensed Schedule II controlled substances as required by State statute and regulations;

2. Failed to comply with Federal and State law as to the procedure to be followed for the disposing and destruction of Schedule II controlled substances;

3. Failed to complete fully DEA Form 222 giving the names and addresses of suppliers and the amounts and dates of scheduled controlled substances received;

4. Failed to keep complete medical records on one patient who was treated with Demerol prescriptions and injections over a four year period;

5. Failed to live up to the standards of a public official in a position of public trust as a member of the West Virginia Board of Medicine from August, 1987 through February 1992.

## III.

### JUST PUNISHMENT

In the Complaint against Dr. Clark, allegations are made that his violations of West Virginia Statutory and Regulatory Law, rise to the level of unprofessional, dishonorable and unethical conduct, and that his conduct is of a character likely to deceive, defraud or harm the public.

Based upon the Findings of Fact and Conclusions of Law made by the Board, Dr. Clark is to lose his license to practice medicine. I have found that the most damning allegations against Dr. Clark were not proved by clear and convincing evidence and cannot, therefore, be used to revoke his medical license. Thus, the focus of the issue of just punishment for Dr. Clark turns on whether Dr. Clark's violations of statutory and regulatory law, supported by the record in this case, justify his removal from the practice of medicine.

In revoking Dr. Clark's license, the finding that he falsely and fraudulently submitted license renewal applications was given great weight by the Board. The Hearing Examiner conceded that all the other allegations, other than the issue of fraud, "... would not themselves be sufficient to justify the revocation of the respondent's medical license." Recommended decision of the Hearing Examiner at 52.

The Board also agreed that the record did not support the allegation that Dr. Clark prescribed controlled substances for himself in August and September, 1989. Furthermore, the Board found that the record did not support the allegation that Dr. Clark is unable to practice medicine with reasonable skill and safety for patients by reason of excessive use and abuse of drugs.

Based upon the record in this case, there is no basis for the finding of the Board that Dr. Clark is not qualified to practice medicine and surgery in West Virginia. To conclude, as the Board did, that Dr. Clark is unqualified to practice medicine for failing to maintain any medical records on one patient is unjustified in fact and in law. The sin addressed in Code 30–3–14(c)(11), and West Virginia Board of Medicine Regulation 11 CSR 1A 12, 1(u), is the failure to keep written records "justifying the course of treat-

ment of a patient"—not, simply, the failure to keep "complete" medical records. In a similar vein, the Board's conclusion that Dr. Clark prescribed and dispensed Demerol to a patient other than in good faith and in a therapeutic manner, which conclusion was also based upon a finding that Dr. Clark failed to keep "complete" medical records, is, for that reason, also a flawed conclusion.

Based upon the Findings of Fact supported by clear and convincing evidence, it is not proper and in the public interest, health, welfare and safety, to revoke Dr. Clark's license to practice medicine and surgery in the State of West Virginia.

The decision of the Board to revoke is now clearly wrong in view of the whole record and is an unwarranted exercise of discretion.

A more difficult issue is what is the appropriate punishment for Dr. Clark. The options are limited by statute. If I had the right to do so, considering society's needs, Dr. Clark would be ordered to give a generous amount of his time providing free medical care for the downtrodden. That he should devote his knowledge and talents to service public needs in atonement for his indiscretions and refusal to follow the rules seems to be fair and to fit the conduct condemned by the Board. Unfortunately, this option is not available to the Court.

That Dr. Clark should be forbidden from practicing medicine, perhaps forever, is undoubtedly wrong. The right to practice medicine is not the private property of the Board. It is a punishment which should be assigned only to those who commit really putrid violations. There is no reason, grounded upon what Dr. Clark did and did not do in this case, to sentence him to that uncertain abyss for him of living with the interminable revocation of his medical license.

Justice must see the human element in any case. It is critical to keep in mind that Dr. Clark confronted his own affliction. His treatment in 1987 was not a malevolent act— it was a good one. That he should have dealt with the problem differently cannot be contested, even by his most ardent supporters. But, this is 1995. Eight years have passed since Dr. Clark obtained drug treatment. The opportunity for fresh or even timely justice has long passed. The issue is not whether he deserves a place in William Bennett's *The Book of Virtues,* but the justness of his banishment from medicine. What purpose is served by destroying Dr. Clark's life?

It is not only an overkill, but it is foolish for the Board to end this man's medical career. Without question, he made mistakes—some of them serious. But, surely those mistakes do not justify the use of the guillotine on Dr. Clark's career.

I am of the opinion that the Board's Order must be modified. Upon the facts proved by clear and convincing evidence, the Board may impose upon Dr. Clark:

1. A public reprimand.
2. A suspension of his license to practice medicine and surgery for a period of six months.

/S/ Ronald E. Wilson
JUDGE