# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Women's Health Center of West Virginia,**
**Respondent Below, Petitioner**

**vs)  No. 13-0519** (Kanawha County 12-AA-125)

**Nicole Parsons,**
**Petitioner Below, Respondent**

**FILED**

June 3, 2014

Released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Women's Health Center of West Virginia, by counsel Russell D. Jessee and Daniel D. Fassio, appeals the order of the Circuit Court of Kanawha County, entered April 24, 2013, that reversed Workforce West Virginia Board of Review's finding that Respondent Nicole Parsons was not eligible for unemployment compensation benefits. Respondent, by counsel Kathy A. Brown, filed a response to which petitioner replied. On appeal, petitioner argues that the circuit court substituted its own judgment for that of the Board of Review in finding that respondent was eligible for benefits.

This Court has considered the parties' briefs, oral arguments, and submitted record, as well as the pertinent authorities, and finds no substantial question of law and no prejudicial error. Accordingly, for these reasons, a memorandum decision affirming the circuit court's order is appropriate pursuant to Rule 21 of the Rules of Appellate Procedure.

Petitioner ("the employer") is a women's health center. Respondent ("the employee") is a licensed practical nurse, who worked for the employer on a part-time basis, from Monday through Wednesday each week beginning on June 28, 2010.

On March 26, 2012, the employee took maternity leave. The employer claims that on May 10, 2012, it told the employee that, when she returned to work, she would resume her usual Monday through Wednesday schedule. The employee denies the employer's claim and counters that the employer merely inquired about her availability. The employee's doctor released the employee to return to work on Monday, May 14, 2012.

The employee claims that during a phone call on May 15, 2012, the employer's office manager told her that it would not be a problem if she did not return to work until May 28, 2012. On May 19, 2012, the employee sent a fax to the employer's charge nurse in which she said, "Beginning the week of 5/28/12 I will be available to work from maternity leave on Monday[s] and Fridays 8:30 to 5:00 PM." The employee states that on Friday, May 25, 2012, she told the employer's charge nurse that she could "start back beginning Monday[, May 28, 2012,] on Mondays and Fridays."

1

On May 29, 2012, the employer's director sent the employee a letter stating that (1) the employee's absences since her physician's release date, May 14, 2012, were unexcused; (2) the employee was to return to work on Monday, June 4, 2012; (3) the employee's work schedule would be the same as it was prior to her maternity leave (Monday through Wednesday); and (4) "If you fail to report for work on Monday, June 4, 2012, your employment will be terminated pursuant to [the employer's] Handbook" which provides that "employees who are absent from work *for three consecutive days without giving proper notice . . .* will be considered to have *voluntarily resigned.*" (Emphasis added.) The employee received the May 29, 2012, letter on Thursday, May 30, 2012. The employee claims that this was the first time the employer sent her any notification of her post-maternity-leave schedule.

Early on the morning of June 4, 2012, the employee called the employer to report that she would not be able to report to work that day as scheduled because her baby was ill and needed to see a doctor. Later that day, the employee spoke with the employer's director who referred her to the termination provision in the May 29, 2012, letter. Two days later, on June 6, 2012, the employer followed up with a second letter telling the employee that she had been "terminated" as of Tuesday, June 5, 2012, because her absences from May 28, 2012, had been unapproved and unexcused, and she had failed to report to work on June 4, 2012.

The employee applied for unemployment benefits on June 6, 2012. On her application, she stated that she could work on "Sunday, Monday, Friday, and Saturday day shift only" due to childcare issues. On June 13, 2012, a deputy at Workforce West Virginia found that the employee was ineligible for benefits because she was not available to work full time, but was not disqualified from receiving benefits because she was discharged without sufficient evidence of misconduct. The employee appealed the ineligibility ruling and the employer appealed the non-disqualification ruling.

At a July 27, 2012, hearing before a hearing officer regarding the parties' appeals, the employee testified that her intention had been to work on Mondays and Fridays because that was when she was available. The hearing officer found that the employee was not disqualified from receiving benefits because her June 4, 2012, absence was not due to misconduct, but to her infant's illness for which the employee provided a doctor's excuse.

The employer appealed to the Board of Review which concluded that the employee was eligible for benefits,[1] but found that—because she had voluntarily resigned without good cause involving the fault of her the employer—she was disqualified from receiving benefits pursuant to West Virginia Code § 21A-6-3(1). The Board of Review reasoned as follows:

> At the end of [the employee's] maternity leave, [the employer] expected her to resume the [Monday through Wednesday] schedule. [The employee] was unable to do so. [The employee] effectively quit her job when she indicated she could only work Mondays and Fridays. The claimant missed work on June 4, 2012, because her daughter was ill. This absence would have been excused under

---

[1]Employee was found to be eligible because she had agreed to work Fridays, Saturdays, Sundays, and Mondays, and it is common for an LPN to work weekends.

2

normal circumstances. Nevertheless, the claimant had no plans to work the following days of that week, Tuesday and Wednesday. Accordingly, it is found that the claimant quit her job. She has failed to show any fault on the part of the the employer causing her to quit.

The employee appealed the Board of Review's decision to the circuit court. By order entered April 24, 2013, the circuit court found that the Board of Review was clearly wrong when it determined that the employee had voluntarily quit her job, and that the employee "was discharged, but not for misconduct." In reversing the Board of Review, the circuit court found that (1) the employee never communicated an intention to resign from her position, and (2) the employee was terminated for failing to report for *one* day of work where the employer's handbook provided that "three consecutive absences will be treated as a voluntary resignation." The court noted that if the employee had remained absent two more days and then received notice of her voluntary resignation from the employer, the employee may well have been considered as having left her job without good cause involving fault on the part of her employer.

The employer now appeals the circuit court's order. This Court has held that

> "[t]he findings of fact of the [WorkForce West Virginia] Board of Review . . . are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*."

Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994). Further,

> [w]e articulated the "extremely limited scope of review" permitted of a court reviewing administrative decisions or orders under W.Va. Code, 29A-5-4(g)(5) [1964] in *Frank's Shoe Store v. W.Va. Human Rights Commission*, 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986). We stated:
>
> > [A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518, 528 (1985).

*Gino's Pizza of West Hamlin, Inc. v. West Virginia Human Rights Com'n*, 187 W.Va. 312, 317, 418 S.E.2d 758, 763 (1992).

On appeal, the employer's sole assignment of error is that the circuit court substituted its own judgment for that of the Board of Review when it found that the employer had wrongfully terminated the employee. The employer argues that the circuit court's finding is contrary to the evidence in the record that shows the employee twice said in May of 2012 that she could not

3

work on Tuesdays or Wednesdays. The employer concludes that the Board of Review correctly found that this evidence evinced that the employee had voluntarily quit her job because she would not have come to work on the Tuesday, June 5, 2012, or Wednesday, June 6, 2012.

We disagree. Although there were various verbal exchanges between the parties regarding the date the employee was to resume work following her maternity leave, the record in this case shows that the employer directed the employee, in writing, to return to work on Monday, June 4, 2012. Although the employee did not report for work that day, she did notify the employer that she would be absent due to her infant's illness by calling the employer that morning and by later supplying a doctor's excuse. Even if the employer found this notice to be insufficient to excuse the absence, it was still only one absence, and not the three absences required by the employer's handbook for a finding that the employee had voluntarily quit her job. Further, there is no evidence in the limited record before us on appeal that the employee would not have appeared for work on Tuesday, June 5, 2012, or Wednesday, June 6, 2012. Finally, the Board of Review found that the employee had voluntarily quit her job. However, the employer sent the employee a notice of termination from the employer, as opposed to a notice that the employer considered her to have voluntarily quit her job due to unexcused absences.

The above facts, taken together, reveal that there was insufficient evidence in the record as a whole to support WorkForce West Virginia Board of Review's decision that the employee had effectively quit her job. Therefore, we find that the circuit court did not err in finding that WorkForce West Virginia Board of Review was clearly wrong, or in finding that the employee was, in fact, eligible for unemployment compensation benefits.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 3, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4