555 A.2d 494

**STATE of Maryland**

v.

**Marvelus ROMULUS.**

**No. 111, Sept. Term, 1988.**

Court of Appeals of Maryland.

March 30, 1989.

528

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellant.

Lawrence G. Bohlen, Cambridge, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

A police officer filed a statement of charges in the District Court of Maryland sitting in Dorchester County, Maryland, charging Marvelus Romulus with three violations of the drug laws. Inasmuch as one of the offenses charged was a felony which was not subject to the jurisdiction of the District Court, Maryland Code (1974, 1984 Repl.Vol.), § 4–301 and § 4–302(a) of the Courts and Judicial Proceedings Article, the case was transmitted to the Circuit Court for Dorchester County. As the District Court statement of charges did not constitute a "charging document" for purposes of the circuit court proceeding, Maryland Rule 4–201(c), a criminal information was prepared in the Office of the State's Attorney for Dorchester County and filed with the clerk of the circuit court. The document charged Romulus with the same crimes as those in the statement of charges.

The judge assigned to try the case was "a visiting judge from Worcester County." When the case was called for trial, the judge dropped a bombshell, at least as far as the defense was concerned. He informed the State's Attorney and the defense counsel that the day before he

> discovered that the criminal information in a rather serious child abuse case was not signed by the State's Attorney as is required by law, but in fact was signed by the State's Attorney's secretary....

With this knowledge he checked the criminal information charging Romulus and determined that it, too, had been

signed by the secretary. He returned to his chambers in Snow Hill and researched the law. He found it to be "very clear." He was convinced by the provisions of Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 592, Md.Rule 4–202(b), and Md.Code (1957, 1987 Repl.Vol.), Art. 10, § 34 and § 40(j)(3),[1] that the State's Attorney's secretary "has absolutely no authority to sign any criminal information or any other pleadings whatsoever." As a matter of fact, the judge observed

> it's very clearly a violation of judicial ethics to file any pleadings unless an attorney signs it, for the simple reason that, when a pleading is filed, it also certifies as to the truthfulness of it as far as the attorney knows and so on.

The judge reiterated: "Clearly without any doubt at all a secretary is not authorized to sign such a document." He explained his concern:

> [The information] is an extremely important document. This is not anything that is just a mere technicality. This is a very serious document that brings a person into court and causes them to be arrested and causes them to face criminal charges.

The judge knew that the information before him had

> not been signed by the State's Attorney because I can see it is not. It's the same signature that appeared yesterday on the other criminal investigations, with the initial after the signature.

He declared: "I don't believe this is a proper document, that's the bottom line of it." The judge suggested a way to remedy the defect:

> Now, if defense counsel wants to, perhaps we can recess long enough for the State's Attorney to file an amended criminal information and go to trial.

---

**1.** The trial judge did not mention the sections of Article 10 which he relied on but it appears that the above sections may be appropriate.

"Short of that," the judge asserted, "I don't know how we can go to trial." He indicated that he would be glad to hear from either counsel. Defense counsel's response was a motion to dismiss the charges "based upon the information which the court has just revealed, which was unknown to defense counsel prior to today." For reasons he did not articulate, the State's Attorney, who was personally prosecuting the case, was not willing to accept the judge's solution to the problem. Instead he referred the judge to the opinion of the Court of Special Appeals in *In re Valita T.*, 75 Md.App. 156, 540 A.2d 854 (1988), a juvenile case, which he claimed held that the State's Attorney's signature or facsimile thereof can appear on a charging document and stated that "when a plea is entered, the matter is cured." There was a pause in the proceedings while the judge read the case. He then read aloud the language on which the State's Attorney relied, "found on page 164 [540 A.2d 854]." It was a quote within a quote, citing 80 C.J.S. *Signatures* § 7 (1953):

"In the absence of a statute prescribing the method of affixing a signature, it may be affixed in many different ways. It may be written by hand, and, generally, in the absence of a statute otherwise providing, it may be printed, stamped, typewritten, engraved, photographed or cut from one instrument and attached to another."

"However," the judge concluded, "that doesn't authorize another person to sign for the State's Attorney." He "accordingly" granted defense counsel's motion to dismiss the charges.

The State's Attorney did not give up. He noted an appeal "on behalf of the State" to the Court of Special Appeals. On our own motion, before decision by that court, we ordered the issuance of a writ of certiorari. The State asks

1. Did Romulus waive whatever objection he may have had to the manner in which the information was signed?

2. Even if the information was improperly signed did the State's Attorney's subsequent actions render it an effective charging document.

The answer to each question is "no."

## I

### (1)

 The State looks to the Maryland Rules to support its claim that Romulus waived whatever objection he may have had to the manner in which the information was signed. Under Rule 4–252(a)(2), in the circuit court, a motion raising "[a] defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense" is deemed a "mandatory motion." As such it shall be filed "within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court ... except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished." Rule 4–252(b). If the defect is not so raised, it is "waived unless the court, for good cause shown, orders otherwise." Rule 4–252(a). The State also relies on Rule 4–202(b) which includes the provision: "A plea to the merits waives any objection that the charging document is not signed." The State urges that since Romulus had entered a plea to the merits, he thereby waived any objection regarding the signing of the criminal information. The State asserts that under the plain language of the rules, Romulus is afforded no excuse for his lack of literal compliance with them. It declaims: "Romulus unquestionably waived his objection to the signing of the information." We are not persuaded by this sophistic argument.

The Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law.

Md. Const. Art. IV, § 18. *See Hauver v. Dorsey,* 228 Md. 499, 502, 180 A.2d 475 (1962). The canons and principles which we follow in construing statutes apply equally to an interpretation of our rules. Of course, we look to the words of a rule from which its meaning may appear to be plain. "But the plain-meaning [canon] is not rigid." *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). Our rules were not adopted merely to standardize procedures, but also to reflect good common sense. *See Renshaw v. State,* 25 Md.App. 270, 275, 333 A.2d 363, *aff'd,* 276 Md. 259, 347 A.2d 219 (1975). A construction which is illogical or unreasonable, or one which is inconsistent with common sense, is to be avoided. *Kaczorowski,* 309 Md. at 516, 525 A.2d 628. It is illogical, unreasonable, and inconsistent with common sense to apply the literal language of our rules to find that, in the circumstances here, Romulus waived any objection to the failure of the State's Attorney to sign the criminal information. The only indication that the handwritten signature "Hugh Carter Vinson" on the information, appearing over the typed "Hugh Carter Vinson, State's Attorney for Dorchester County, Maryland," was not the actual signature of the State's Attorney is a small letter "n" crammed against the end of the last name. The same signature appears on the "Certificate of Service" appended to the criminal information. We reproduce the signatures. On the criminal information:

Hugh Carter Vinson
State's Attorney for
Dorchester County, Maryland

On the certificate of service:

Hugh Carter Vinson
State's Attorney for
Dorchester County, Maryland

The little squiggle at the end of the signature could well be taken as a part of the personalized signature of the State's Attorney. Certainly it is not so outstanding as to flag that the information was actually signed by someone other than the State's Attorney. Furthermore, that same signature, purporting to be that of the State's Attorney, appeared in like manner on other documents in the case. For example, requests to issue subpoenas, the "State's Answer to Defendant's Motion for Discovery and Inspection," acknowledgments of the receipt of notices of the date of trial, the letter of transmittal of the charging document by the State's Attorney to the circuit court clerk, all bore the signature as it appeared in the criminal information.[2] There is no suggestion that defense counsel actually knew that the criminal information was not signed by the State's Attorney until the trial judge so informed him. And the trial judge found it out by being forewarned. He compared the signature on Romulus' information with that on the informations he learned had been signed by the secretary and found them to be the same. In the circumstances here, a person could reasonably be misled into believing that the State's Attorney had personally signed the document. In short, there was no good reason why defense counsel should have known that the State's Attorney had not signed the information until the trial judge disclosed it. Defense counsel then promptly moved to dismiss the charges. On the facts of this case, our rules are not to be construed as to divest the trial judge of discretion to permit a late challenge to the signature, when, as here, that challenge is made before trial. We hold that Romulus did not waive the alleged defect in the criminal information.

### (2)

■ The State claims that in any event the actions of the State's Attorney rendered the information an "effective

---

**2.** Some pleadings over what was purported to be the signature of an assistant State's Attorney appeared to have been actually signed by the assistant State's Attorney.

charging document." It urges that "the information was subsequently adopted, approved and ratified by the State's Attorney. . . ." It first supports this claim by pointing to a docket entry. The docket under date of 14 December 1987 reads:

Criminal Information filed by the State's Attorney for Dorchester County. . . .

This, however, falls far short of establishing that the State's Attorney personally filed the document, and thereby indicated his approval of it, even if that would suffice. We are confident that had the secretary or anyone else in the State's Attorney's Office tendered this document to the circuit court clerk for filing, the clerk would have accepted it and made the docket entry as he did. We cannot conceive that, in the normal course of events, the clerk would have insisted that the document be presented personally by the State's Attorney or if it were not that he would note on the docket who had brought it in to be filed. We do not believe that the docket entry alone is enough to show that the State's Attorney "adopted, approved and ratified" the criminal information.

The State's second support for the claim also looks to the docket entries which indicate that the State's Attorney or one of his assistants appeared in court on matters preliminary to the trial. Also, the State points out, the State's Attorney "personally called the case for trial and presented arguments why the information was valid and should not be dismissed." By this conduct, the State concludes, the information "was rendered a fully effective charging document by the State's Attorney's implicit acknowledgement, ratification and adoption of it before the trial court." We do not agree. The State refers us to *Eastern Air Lines v. Phoenix*, 239 Md. 195, 210 A.2d 515 (1965), which the State indicates stands for the proposition that the absence of a signature on a pleading or similar document "may be properly cured thereafter." In that case, a majority of the Court referred with approval to the case of *Canadian Bank of Commerce v. Leale*, 14 Cal.App.

307, 111 P. 759 (1910), "citing many supporting authorities." 239 Md. at 206, 210 A.2d 515. *Leale* involved a complaint seeking recovery on a promissory note which was filed one day before the end of the period of limitation. Neither the plaintiff nor its counsel had signed the complaint. An amended complaint bearing both signatures was filed fifteen days later. The Court held that the filing of the unsigned complaint commenced the action and tolled the statute, and the omission of the signatures was an irregularity which could be cured by an amendment which related back to the original filing. *Id.* The *proper* way to cure any defect in the information by reason of the failure of the State's Attorney to sign it, as *Eastern Air Lines* indicated and the trial judge here suggested, was for the State's Attorney to amend the complaint by signing it. *See* Md. Rule 4–204. Instead, the State's Attorney rejected this obvious solution and opted to stand fast on his belief that the information was not defective. The State now adopts a fallback position that even if the information were defective, his conduct cured the defect. We are not persuaded by the notion that the State's Attorney's willingness to proceed with the prosecution under the defective information accomplished this. We say again that the effective way to still the troubled waters was for the State's Attorney simply to follow the judge's suggestion and sign the information.

## II

■ Our discussion thus far has been on the assumption, arguendo, that the criminal information was defective because it was improperly signed. The State, in its approach to the second question, suggests that, in fact, the information was not improperly signed, but, even if it were, the irregularity was not such as to render the document null and void. Therefore, the defect was susceptible of being cured. Romulus, on the other hand, claims that since the information was not signed as required by law, the doc-

ument was null and void, and it may not be enlivened by any means.

The office of State's Attorney is a constitutional office. The Maryland Constitution Art. V, § 7 declares:

> There shall be an Attorney for the State in each county and the City of Baltimore, to be styled "The State's Attorney".... [3]

*See Murphy v. Yates,* 276 Md. 475, 488, 348 A.2d 837 (1975). "A 'State's Attorney' means a person authorized to prosecute an offense." Md.Rule 4–102(j). A State's Attorney must have been admitted to practice law in this State. Md. Const. Art. V, § 10. He "shall perform such duties ... as shall be prescribed by the General Assembly." *Id.* § 9. But there is little specificity in the enumeration of those duties.

> In Maryland, the powers of the State's Attorneys are nowhere specifically enumerated and defined ... with the result that our State's Attorneys are vested with the broadest official discretion.

*Murphy v. Yates,* 276 Md. at 489, 348 A.2d 837 (citation omitted). Maryland Code (1957, 1987 Repl.Vol.), Art. 10, § 34, however, states:

> The State's attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State, all cases in which the State may be interested....

In the performance of that duty, Md.Rule 4–202(b), which as we have seen has the force of law, requires that a criminal information be signed by the State's Attorney, or if not signed by him, it must be signed by a person "authorized by law to do so." In Dorchester County, the State's Attor-

---

**3.** For a comprehensive history of the office of State's Attorney and a discussion of the duties of a State's Attorney, *see Murphy v. Yates,* 276 Md. 475, 480–496, 348 A.2d 837 (1975). *See also, Babbitt v. State,* 294 Md. 134, 137–140, 448 A.2d 930 (1982), which discusses the power of the court to appoint temporary officers when necessary for the conduct of a specific proceeding.

ney's duly appointed assistants are authorized by law to sign informations inasmuch as they "shall present ... cases to the Dorchester County grand jury and perform such other acts and duties in relation to the grand jury, Circuit and District Court sitting in Dorchester County, as deemed necessary." Md.Code, Art. 10, § 40(j)(3).

Furthermore, Md.Rule 1-311(a) requires that

[e]very pleading ... of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice in this State....

*See Attorney Griev. Comm'n v. Goldberg,* 292 Md. 650, 657–658, 441 A.2d 338 (1982). Rule 1-202(r) makes a charging document as used in Title 4 of the Rules a pleading. A charging document under Title 4 embraces an information. Rule 4-102(a). Rule 1-311(b) spells out the effect of a signature on a pleading:

The signature of an attorney on a pleading ... constitutes a certification that the attorney has read the pleading ...; that to the best of the attorney's knowledge, information and belief there is good ground to support it; and that it is not interposed for improper purpose or delay.

We conclude that the Maryland Constitution, the relevant statutes, and the appropriate Maryland Rules, considered together, do not contemplate that the broad discretion which a State's Attorney enjoys goes so far as to enable him to permit his secretary to sign a criminal information, even in his name. Nowhere is authority to that effect expressed or implied. On the contrary, in the light of the limitation on the eligibility for the office of State's Attorney, the prescriptions as to who *shall* [4] sign the information, and the enunciation of the effect of the signature, we find it to be clear that a secretary is not a person authorized by law to sign the document. It follows that a criminal information must be signed by a State's Attorney as defined by

---

**4.** *See* Md.Rule 1-201(a).

Md.Rule 4–102(j). This is not to say, however, that a facsimile signature of one of those persons will not suffice.[5]

We hold that the criminal information here did not meet the requirements of the rule.

■ Although the information here was defective because of the failure of a person authorized by law to sign it, it was not thereby rendered null and void. The issue was resolved in *Eastern Air Lines,* 239 Md. 195, 210 A.2d 515. In that case a majority of this Court, following the weight of authority, applied the principle that

> the absence of a signature to a pleading does not make it void or a nullity but only irregular.

*Id.* at 206, 210 A.2d 515. This view is supported by the sanctions imposed by Rule 1–311(c) for failure to sign a pleading as required. Paragraph (c), declaring that the pleading *"may* be stricken ...,'' furnishes clear indication that a pleading is not a nullity because of the lack of a proper signature (emphasis added). So, in Maryland, the omission of a required signature from a pleading is considered a mere irregularity or formal defect which can be remedied.

### III

■ We deem it advisable to point out that a defendant is not entitled to relief under the Maryland Post Conviction Procedure Act, Md.Code, Art. 27, § 645A because of the failure of a person authorized by law to sign an information. There must be a point of finality in any criminal prosecution and with respect to an information defective for the reason here, we think that the fair point of finality is reached when the trial on the merits has been concluded. The defect in the information is not one of constitutional dimension. It does not fall within one of those "situations

---

5. A facsimile signature is one produced by mechanical means but recognized as valid by law for many transactions. Webster's Third International Dictionary of the English Language Unabridged 813 (1981).

where the courts have required an 'intelligent and knowing' standard [for a waiver]." *Curtis v. State*, 284 Md. 132, 148, 395 A.2d 464 (1978). Therefore, the "intelligent and knowing" waiver standard called for by § 645A(c) of the Post Conviction Act is not brought into play. *Id.* Judge Eldridge, writing for the Court in *Curtis*, found that

> [i]t has repeatedly been recognized that the word "waiver" itself is ambiguous, susceptible to numerous meanings depending upon the particular context in which it is used.

*Id.*, 284 Md. at 141, 395 A.2d 464. "Each case must be decided on the facts peculiar to it." *Id.*, quoting *United States v. Chichester*, 312 F.2d 275, 281 (9th Cir.1963). The short of it is, that in the context of an information defective because of an improper signature, when judgment of conviction and sentence has been duly entered in a case without the issue being raised, the defendant is conclusively presumed to have waived the issue. *Cf.* 5 A.L.R.Fed. § 2(b) at 924–925.

JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY AFFIRMED;

COSTS TO BE PAID BY DORCHESTER COUNTY.

ADKINS, Judge, concurring.

I agree with the result in this case and with virtually all the reasoning explaining that result. My only real quarrel with the majority is produced by its statement that a secretary may not sign the State's Attorney's name to a criminal information.

Of course, a secretary is not a person who is authorized by rule or by statute to sign his or her own name to a charging document. But if a facsimile signature of a person so authorized is sufficient, I do not see why it cannot be permissible for a secretary to sign the name of the authorized person as well.

Rule 4–202(b)'s requirement that an indictment or information "be signed by the State's Attorney of a county or by

any other person authorized by law to do so" is not imposed merely to assure that a proper signature is appended to a piece of paper. The ink marks that constitute the signature are not what is important. Those ink marks are intended to be symbolic of something more fundamental. They certify that an authorized person has reviewed the document and has found it to be correct in form and substantiated by facts, or at least that the person is willing to assume responsibility for so representing. This fundamental purpose is reflected in Rule 1–311(b), which explains that a lawyer's signature on a pleading verifies that "the attorney has read the pleading ...; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for improper purpose or delay." As the majority notes, a charging document is a pleading, Rule 1–202(r), and thus is subject to Rule 1–311(b).

If a State's Attorney, deputy State's Attorney, or assistant State's Attorney has read a charging document and concludes that the requirements of Rule 1–311(b) have been met, the basic purposes of the rule—its screening and accountability functions—have been satisfied. Under these circumstances, I see no reason why the lawyer could not authorize his or her secretary to sign a charging document in the lawyer's name after ascertaining that the document is in proper form and that the charges are appropriate, based on the evidence in the case. Of course, the same effect would be produced if the lawyer, having reviewed the document in light of Rule 1–311(b), and having satisfied him or herself that its requirements were met, simply directed the secretary to affix the lawyer's name via a rubber stamp facsimile of the signature. In a situation such as this, the State's Attorney's signature, written by the secretary, is the functional equivalent of the State's Attorney's facsimile signature and in no way offends the policy of either Rule

1–311 or Rule 4–202(b).[1]

In *In re Valita T.*, 75 Md.App. 156, 164, 540 A.2d 854, 858 (1988), the Court of Special Appeals held that a preprinted facsimile of the State's Attorney's signature did not violate the requirement of Rules 1–311 and 4–202(b) when the State's Attorney "approved and adopted the pre-printed signature as his own legitimate signature." There is no reason why that approval may not come before the signature is affixed, as the majority appears to recognize. *See* 80 C.J.S. *Signatures* § 6, at 1291 (1953) ("Generally, a signature may be made for a person by the hand of another, acting ... at his direction") [footnotes omitted].

Of course, when a charging document has been signed in the manner I have suggested, a question may arise as to whether the secretary was in fact authorized to sign the State's Attorney's name. I suppose a similar question might arise if the secretary affixed a facsimile signature of the State's Attorney. If that question should be raised, it would first be faced with the strong presumption, recognized by the majority, that public officers properly perform their duties. *Schowgurow v. State*, 240 Md. 121, 126, 213 A.2d 475, 479 (1965). Should that presumption be sufficiently rebutted, as it was in this case, the burden would then be upon the State to come forward with evidence to demonstrate the grant of authority to the secretary. Were the authority shown to the satisfaction of the court, the charging document would be sufficient; were it not shown, dismissal ordinarily would be required.[2]

It seems to me that this view of matters offends no policy of statute or of rule and produces a common sense and

---

**1.** The authority to sign the State's Attorney's name or to affix a facsimile signature could be express as to a specific document or could be pursuant to general office practice—*e.g.*, a policy stating that all charging documents in the State's Attorney's out basket have been reviewed by that official and that a secretary may affix the official's signature (by facsimile or otherwise) to those documents.

**2.** No evidence was presented in this case regarding the secretary's authority to sign the name of the State's Attorney.

workable process that facilitates the proper handling of large numbers of documents that require authenticating signatures. I see no reason to restrict the signing requirement as narrowly as the majority has.