602 S.E.2d 466

**Katherine Anne HOOVER, M.D., Appellant Below, Appellee,**

v.

**WEST VIRGINIA BOARD OF MEDICINE, Appellee Below, Appellant.**

**No. 31576.**

Supreme Court of Appeals of West Virginia.

Submitted: April 28, 2004.

Filed: May 28, 2004.

Nancy C. Hill, Esq., Winter Johnson & Hill, Charleston, for Appellant.

A. Andrew MacQueen, Esq., Charleston, for Appellee.

DAVIS, Justice.

The West Virginia Board of Medicine (hereinafter referred to as "the Board"), appellant/appellee below, appeals an order of the Circuit Court of Harrison County. The circuit court's order reversed a decision of the Board which had revoked the medical license of Dr. Katherine Anne Hoover (hereinafter referred to as "Dr. Hoover"), appellee/appellant below. The circuit court reversed the Board's decision on the sole ground that the initiating complaint and notice of hearing had not been properly signed by an authorized official. Here, the Board contends that the signature discrepancy was insufficient to warrant reversal of its decision. After a review of the briefs and record in this matter, the circuit court's order is affirmed in part and reversed in part.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case has been before this Court on two prior occasions. *See State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996) (involving issuance of a subpoena on a privately retained court reporter); *State ex rel. Hoover v. Smith*, 198 W.Va. 507, 482 S.E.2d 124 (1997) (involving issuance of subpoenas to conduct depositions). Consequently, we will be brief in our recitation of the underlying facts.

Dr. Hoover was licensed to practice medicine in West Virginia in 1978. On May 13, 1996, the Board issued a complaint and notice of hearing (hereinafter referred to as "complaint") against Dr. Hoover.[1] The complaint alleged that Dr. Hoover asked a seventeen-year-old female patient, who was seeking gynecological care, whether the patient and any of her girlfriends would be willing to come to Dr. Hoover's home and have sex with her teenage son. The complaint charged that this conduct violated W. Va. Code §§ 30–3–14(c)(8) and (17) and 11 C.S.R. 1 A–12.1(e), (j) and (r) and 11 C.S.R. 1A–12.2(d).

The evidentiary hearing took place on July 26, 2001. Dr. Hoover appeared briefly at the hearing without counsel and Dr. Hoover gave an opening statement. However, after giving her opening statement, Dr. Hoover left the proceeding. Dr. Hoover advised the hearing examiner that she had to go to work, and therefore, she would not participate in the proceedings. The hearing continued in Dr. Hoover's absence. Several witnesses were called and numerous exhibits were introduced into evidence. At the conclusion of the proceedings, the hearing examiner issued a lengthy recommended decision dated October 31, 2001. The recommended decision found the charges against Dr. Hoover were proven, and that her medical license should be revoked, along with additional sanctions.

By order entered November 9, 2001, the Board adopted the hearing examiner's recommendation with some modifications. The Board revoked Dr. Hoover's medical license, but suspended the revocation and placed her on five years probation, with certain restrictions.

Dr. Hoover filed a petition for review of the Board's decision with the circuit court. In Dr. Hoover's petition for review, she assigned error to numerous matters. The circuit court, however, ruled upon only one issue. By order entered December 18, 2002, the circuit court found that the "signatures on [the] Complaint and Notice of Hearing of A. Paul Brooks, Jr., M.D., President, and William T. Wallace, Jr., M.D., M.P.H., Secretary, are not authentic in that said signatures were executed by Ellen Briggs, Administrative Secretary to the Executive Director." As a result of this finding, the circuit court reversed the Board's decision to revoke Dr. Hoover's medical license. From this ruling, the Board filed the instant appeal.

## II.

### STANDARD OF REVIEW

■ In this proceeding, the circuit court was called upon to review a decision of an administrative agency. When an administrative decision is reversed by a circuit court,

---

**1.** The complaint and notice of hearing is one  document.

this Court applies the following standard of review:

> In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law de novo.

Syl. pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). *See Clark v. West Virginia Bd. of Medicine*, 203 W.Va. 394, 397, 508 S.E.2d 111, 114 (1998).

## III.

## DISCUSSION

The circuit court reversed the Board's decision to revoke Dr. Hoover's medical license solely on the ground that the signatures on the complaint were made by an administrative secretary. Before we squarely address the merits of this issue, we must first determine whether the circuit court could properly consider the issue of the authenticity of the complaint signatures. This issue, "having fairly arisen upon the record, will be considered and determined by this Court upon its own motion." *Backus v. Abbot*, 136 W.Va. 891, 900, 69 S.E.2d 48, 53 (1952) (citations omitted).

*A. The Signature Requirement for Issuing a Disciplinary Complaint Against a Medical Doctor is a Jurisdictional Matter*

■ The initial issue we must decide is whether Dr. Hoover's contention that the complaint was not properly signed was an issue that could be raised on appeal to the circuit court. The record in this case shows that Dr. Hoover refused to put on any evidence during the proceedings before the hearing examiner. Dr. Hoover appeared briefly and gave an opening statement. During that opening statement, Dr. Hoover made the following comment: "Well, the important thing is the signature on the subpoenas and the complaint were forged." Dr. Hoover went on to make other comments before she left the proceeding.

■ The law is clear in holding that " '[a]n opening statement ..., having no evi-

dentiary value, cannot operate to place an issue in controversy.' " *State v. Richards*, 190 W.Va. 299, 303, 438 S.E.2d 331, 335 (1993) (quoting *United States v. Green*, 648 F.2d 587, 595 (9th Cir.1981)). *See also Alexander v. Jennings*, 150 W.Va. 629, 636, 149 S.E.2d 213, 218 (1966) ("In this jurisdiction and in general, the opening statement of counsel is ordinarily intended to do no more than to inform the [factfinder] in a general way of the nature of the action and the defense in order that the [factfinder] may better be prepared to understand the evidence."). Consequently, as a result of Dr. Hoover's decision *not* to participate in the hearing, no evidence was introduced on her behalf. Specifically, no evidence was submitted on the issue of the possible fatal signature defect in the complaint. It was not until Dr. Hoover appealed the Board's decision to the circuit court that she presented evidence regarding the signatures on the complaint. "Our general rule is that nonjurisdictional questions ... raised for the first time on appeal, will not be considered." *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999). Further, if a party fails to properly raise a nonjurisdictional "defense during [an] administrative proceeding, that party waives the defense and may not raise it on appeal." *Fruehauf Trailer Corp. v. W.C.A.B.*, 784 A.2d 874, 877 (Pa.Cmwlth.2001). *See also ESG Watts, Inc. v. Pollution Control Bd.*, 286 Ill.App.3d 325, 221 Ill.Dec. 778, 676 N.E.2d 299, 307 (1997) ("[Appellant] contends that the Agency failed to provide sufficient notice of the reasons for denial of the permits. However, [appellant] failed to raise this issue in the proceeding before the Board. Hence, it waived the right to raise the issue on appeal."); *Board of Registration in Medicine v. Fiorica*, 488 A.2d 1371, 1375 (Me.1985) ("[Appellant] waived any defense or objection he may have had by failing to raise such defense or objection before the Administrative Court."); *In re Annexation of Territory of Riveredge Township*, 46 Ohio App.3d 29, 545 N.E.2d 1287, 1297 (1988) ("[I]f a party does not object to alleged errors ... at an administrative hearing, he waives his right to raise those errors on appeal."). This issue

was succinctly addressed by the dissent in *West Virginia Board of Medicine v. Shafer,* 207 W.Va. 636, 535 S.E.2d 480 (2000), as follows:

> In administrative proceedings ..., the circuit court is sitting in the capacity of an appellate court. In such circumstances, it is improper for that court to consider an issue that was not initially raised below. In fact, the West Virginia Administrative Procedures Act specifically directs that a circuit court's review of an administrative proceeding
>
> shall be conducted by the court without a jury and shall be upon the record made before the agency, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken before the court. The court may hear oral arguments and require written briefs.
>
> W. Va.Code § 29A–5–4(f) (1998) (Repl. Vol.1998).

*Shafer,* 207 W.Va. at 639, 535 S.E.2d at 483 (Davis, J., dissenting).

Although *nonjurisdictional* issues generally may not be raised for the first time in an appeal, our cases have made clear that *jurisdictional* matters " 'may be raised for the first time on appeal.' " *Easterling v. American Optical Corp.,* 207 W.Va. 123, 132, 529 S.E.2d 588, 597 (2000) (quoting *Jan–Care Ambulance Serv., Inc. v. Public Serv. Comm'n of West Virginia,* 206 W.Va. 183, 189 n. 4, 522 S.E.2d 912, 918 n. 4 (1999)). Thus, in the instant case we must determine whether an improperly signed administrative disciplinary complaint against a physician presents a jurisdictional issue. This matter is one of first impression for this Court.

The Legislature enacted the West Virginia Medical Practice Act, codified at W. Va.Code § 30–3–1 (2002), *et seq.,* specifically for the purpose of setting forth the framework for bringing disciplinary actions against physicians. *See State ex rel. Hoover v. Smith,* 198 W.Va. 507, 512, 482 S.E.2d 124, 129 (1997)

("The West Virginia Medical Practice Act ... governs the procedures the Board of Medicine must follow in disciplinary proceedings.").[2] W. Va.Code § 30–3–8 (2002) provides, in relevant part, that "[t]he ... secretary ... shall, together with the president of the board, sign all licenses, reports and other documents." Obviously, the language "other documents" is the phrase which would encompass a disciplinary complaint. Thus, under W. Va.Code § 30–3–8, the president and secretary of the Board are obligated to sign a disciplinary complaint against a physician.

The operative word in the quoted passage from W. Va.Code § 30–3–8 is the word "shall." Our cases have noted that " '[i]t is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' " *Retail Designs, Inc. v. West Virginia Div. of Highways,* 213 W.Va. 494, 500, 583 S.E.2d 449, 455 (2003) (quoting Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.,* 171 W.Va. 445, 300 S.E.2d 86 (1982)). Because the statute makes it mandatory that the Board secretary and president sign a disciplinary complaint, the absence of those signatures would render a disciplinary complaint a nullity. *See State v. Mays,* 104 Ohio App.3d 241, 661 N.E.2d 791, 794 (1995) ("An unsigned complaint is merely a piece of paper. It does not acquire the essential characteristic of a written allegation of wrongdoing until [properly] sign[ed]."). In light of this fact, we hold that the issue of proper signatures on an administrative disciplinary complaint brought against a physician by the West Virginia Board of Medicine is a jurisdictional matter that may be raised for the first time in on appeal. Several considerations have helped guide us to this holding.

In a case that pre-dates the rules of civil procedure, *Morris v. Gates,* 124 W.Va. 275, 20 S.E.2d 118 (1942), this Court addressed the issue of an unsigned complaint.[3] In *Mor-*

---

**2.** It is provided in W. Va.Code § 30–3–2, in part, that "[t]he purpose of this article is to provide for the ... professional discipline of physicians and podiatrists and for the ... discipline of physician assistants."

**3.** Rule 11(a) of the West Virginia Rules of Civil Procedure now governs the issue of signing a complaint. We do not, in this opinion, decide to what extent *Morris* is still applicable in civil litigation. *See Becker v. Montgomery,* 532 U.S.

*ris* the plaintiffs filed an unsigned complaint seeking to subject a tract of land, owned by the defendants, to a vendor's lien. The defendants did not file an answer to the complaint, nor make any appearance in the proceeding. The plaintiffs obtained a favorable judgment. However, subsequent to obtaining the judgment, the plaintiffs filed a properly signed amended complaint that sought additional relief. While the opinion in the case is not clear, it appears that the plaintiffs also obtained a favorable judgment on the amended complaint. The defendants prosecuted an appeal assigning numerous grounds of error, none of which involved the fact that the original complaint was unsigned.

Although the defendants in *Morris* did not assign error to the unsigned complaint, this Court, *sua sponte*, held that "the question thus arising being jurisdictional, we think it cannot, with propriety, be ignored." *Morris*, 124 W.Va. at 278, 20 S.E.2d at 120. The Court went on to reverse the case on the issue raised *sua sponte* as follows:

> We believe it is unnecessary to cite authority to sustain the well-settled general rule that courts and parties alike are not required to act upon pleadings the responsibility for which cannot be determined, and the further fact that affirmative pleadings, such as a bill of complaint, contain binding allegations usable against the same parties in any subsequent litigation between them and, according to some cases, by parties unknown to the proceeding in which they are entered. As we view this record, the unsigned form of a bill of complaint would not, accompanied by neither waiver nor estoppel, be sufficient to bind anyone, and therefore could not properly be regarded as an appearance.

The appellees take the position that this defect is cured by the filing of the amended bill of complaint upon which both of the decrees of sale are predicated. This contention might be maintainable if the amended bill of complaint had contained the allegations of the original bill or had included them by reference, and had been

properly matured or substantive appearances entered of record. But none of these situations being shown by this record, the amended bill of complaint simply alleging the judgment lien owned by Herold & Herold and making no reference to the original bill of complaint, save to allege that it was filed and taken for confessed, we find nothing in this record that we believe supplied what we regard as a missing element of a chancery cause, the absence of which deprives the conduct of that cause, requiring a bill of complaint for its support, of all foundation.

*Morris*, 124 W.Va. at 278–79, 20 S.E.2d at 120. *Accord Town of Camden on Gauley ex rel. Mollohan v. O'Brien*, 138 W.Va. 787, 801, 79 S.E.2d 74, 82 (1953) ("[T]he fact that a proceeding ... was based entirely on an unsigned bill of complaint raised a jurisdictional question, which could not be ignored on appeal, although such question was not included in the assignments of error."). *See also Hoyme v. Board of Education*, 107 Cal. App.3d 449, 165 Cal.Rptr. 737, 740 (1980) ("The requirement of proper notice [with signature] is jurisdictional; unless such notice is given, the reassignment of a principal to a teaching position is ineffective and subject to reversal."); *Raynor v. Hickock Realty Corp.*, 61 Conn.App. 234, 763 A.2d 54, 58 (2000) (affirming dismissal because of lack of jurisdiction when summons and complaint were not signed); *Black v. Ameritel Inns, Inc.*, 139 Idaho 511, 81 P.3d 416, 420 (2003) (affirming dismissal of complaint that was not properly signed); *Old Hickory Engineering & Mach. Co., Inc. v. Henry*, 937 S.W.2d 782, 786 (Tenn.1996) (affirming dismissal of complaint that was not properly signed); *Eyman v. Kentucky Cent. Ins. Co.*, 870 S.W.2d 530, 532 (Tenn.App.1993) (dismissing complaint because summons was not signed by court clerk); *Schaefer v. Riegelman*, 250 Wis.2d 494, 639 N.W.2d 715, 724 (2002) (observing that, because signature "defect was fundamental in nature, the circuit court did not gain jurisdiction over the defendant").

Having determined that the signature requirement for initiating the complaint in this

---

757, 764, 121 U.S. 1801, 1806, 149 L.Ed.2d 983, 991 (2001) (holding that, under federal Rule 11(a), the signature requirement on a *notice of*

*appeal* is not jurisdictional and may be cured if properly supplied once omission is called to a party's attention).

case was a jurisdictional issue, Dr. Hoover could raise the matter for the first time in her appeal to the circuit court.

### B. The Signature Requirement for Issuing a Disciplinary Complaint Against a Medical Doctor Cannot be Delegated

█ The next issue we must decide is whether the circuit court was correct in finding the Board's president and secretary could not authorize an administrative secretary to affix their names to the complaint. The circuit court found that our decision in *Clark v. West Virginia Board of Medicine*, 203 W.Va. 394, 508 S.E.2d 111 (1998), prevented the Board's president and secretary from authorizing an administrative secretary to affix their names to the complaint.

In *Clark*, the Board revoked the medical license of Dr. Clark. The decision was appealed by Dr. Clark to the circuit court. Following its review, the circuit court ordered that the Board's order be modified to provide for the suspension of Dr. Clark's medical license for six months and a public reprimand. Both Dr. Clark and the Board appealed to this Court. The primary issues before this Court in *Clark* concerned whether the circuit court was correct in modifying the Board's decision, and whether the circuit court had authority to impose community service on Dr. Clark in lieu of a suspension. The circuit court believed that it could not impose community service. This Court held that the circuit court acted correctly in modifying the Board's decision, but that it was wrong in determining that it could not impose community service in lieu of suspension. This Court went on to "affirm in part, reverse in part, and remand th[e] case to the circuit court to impose, in lieu of suspension, the sanction of community service which is provided for in the legislative rules and the public reprimand." *Clark*, 203 W.Va. at 401, 508 S.E.2d at 118.

During this Court's discussion of the issues actually presented in *Clark*, we *sua sponte* noted that subpoenas had been issued in the case that were signed by an administrative secretary on behalf of the Board president. We noted:

As the Board is granted statutory authority to issue subpoenas, clearly the pre-ferred practice is for the President to personally sign all subpoenas, and when that is not possible or practicable, then the better practice is to designate a member of the Board rather than the investigator's secretary to sign subpoenas.

*Clark*, 203 W.Va. at 398, 508 S.E.2d at 115.

In the instant case, the Board contends that the quoted language from *Clark* was mere dicta, and, therefore, the circuit court was wrong in relying upon it to reverse the Board's decision. We agree with the Board that the above language was dicta. *See In re Assessment of Kanawha Valley Bank*, 144 W.Va. 346, 382–83, 109 S.E.2d 649, 669 (1959) ("Obiter dicta or strong expressions in an opinion, where such language was not necessary to a decision of the case, will not establish a precedent."). However, we disagree with the Board's argument that the circuit court could not rely upon that language as a guide to its resolution of the issue before it. In fact, this Court has, on occasion, relied upon dicta to establish new points of law. *See Yeager v. Farmers Mut. Ins. Co.*, 192 W.Va. 556, 560, 453 S.E.2d 390, 394 (1994) (relying upon dicta in *Davis v. Safe Insurance Co.*, 120 W.Va. 505, 199 S.E. 364 (1938) to establish a new principle of law); *State ex rel. Blake v. Chafin*, 183 W.Va. 269, 272, 395 S.E.2d 513, 516 (1990) (relying upon dicta in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), to establish a new principle of law); *State v. Oldaker*, 172 W.Va. 258, 266, 304 S.E.2d 843, 850 (1983) (relying upon dicta in *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982) to establish a new principle of law). We believe the dicta in *Clark* has laid the groundwork for resolution of the issue now before us.

As is true of a subpoena, the signing of a complaint, be it administrative or civil, is not a trivial matter. *See Howard v. Bentley*, 1967 WL 5808, at *1 (Pa.Com.Pl.1967) (unpublished opinion) ("[T]he requirements of signature to a pleading are substantial and not perfunctory."). For example, under Rule 11(a) of the West Virginia Rules of Civil Procedure, a complaint must signed by an attorney or pro se litigant. It has been noted that the signature requirement of Rule 11(a) "certifies to the court that *the signer*

*has read the document,* has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both[.]" Franklin D. Cleckley, Robin Jean Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure,* § 11(a) at p. 241 (2002) (emphasis added). In the case of *Schaefer v. Riegelman,* 250 Wis.2d 494, 639 N.W.2d 715 (2002), the Wisconsin Supreme Court addressed the significance of a signature on a complaint as follows:

> [The signature] requirement is not simply putting ink on paper. Rather, it is a deliberate process by which the lawyer guarantees the validity of a claim. When a lawyer signs a pleading, it is not merely a pro forma act of notarization. Before affixing a signature to pleadings, the lawyer is expected to engage in a moment of reflection, review the facts, consider the law, and satisfy himself or herself that there is a good faith basis on which to commence the action. In this way, the [signature] requirement provides an essential protection for the people and businesses of the state to remain free from being sued frivolously or improperly—a protection that is at the core of an attorney's professional responsibility.

*Schaefer,* 639 N.W.2d at 723. Notwithstanding the underlying significance of a signature on a complaint, the Board contends that, under W. Va.Code § 2–2–5 (2002), the authority to sign the complaint could be delegated to an administrative secretary. We disagree.

W.Va.Code § 2–2–5 states "[w]hen a statute requires an act to be done by an officer or person, it shall be sufficient if it be done by his agent or deputy, unless it be such as cannot lawfully be done by deputation." The Board points out that in the decision of *State ex rel. Ruddlesden v. Roberts,* 175 W.Va. 161, 332 S.E.2d 122 (1985) (per curiam), this Court stated that W. Va.Code

§ 2–2–5 permitted the Commissioner of the Department of Motor Vehicles to delegate the authority to sign an order suspending the driver's license of the appellant. The decision in *Ruddlesden* is not controlling for one simple reason. The Commissioner in *Ruddlesden* delegated her authority under the statute to "the *Director* of the Department's Safety and Enforcement Division[,]" *State ex rel. Ruddlesden,* 175 W.Va. at 164, 332 S.E.2d at 125 (emphasis added), not an administrative secretary.

While we believe that, as a general matter, W. Va.Code § 2–2–5 permits an officer to delegate his/her authority to an agent or deputy, there is a limit as to how far down the chain of command such delegation may go. In this opinion, we need not draw a bright line as to the permissible extent of delegation. It is sufficient, for the purposes of this opinion, for us to hold that, under W. Va.Code § 2–2–5, an administrative secretary is not an agent or deputy for whom authority may be delegated to sign a disciplinary complaint against a physician under the West Virginia Medical Practice Act. *See State v. Romulus,* 315 Md. 526, 555 A.2d 494, 500 (1989) ("[W]e find it to be clear that a secretary is not a person authorized by law to sign the document.").[4]

We find support for our holding in decisions by the majority of courts that have addressed the issue of an attorney delegating his/her duty to sign a civil complaint or other court document. The general rule appears to be that an attorney cannot delegate his/her duty to sign a civil complaint or other court document. *See Pavelic & LeFlore v. Marvel Entertainment,* 493 U.S. 120, 125, 110 S.Ct. 456, 459, 107 L.Ed.2d 438, 444 (1989) ("The signing attorney cannot leave it to some trusted subordinate … to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own

---

4. Assuming, for the sake of argument, that W. Va.Code § 2–2–5 could be construed as permitting an administrative secretary to sign documents for officers, we find that the statute itself would preclude delegation of the authority to sign a disciplinary complaint. W. Va.Code § 2–2–5 permits delegation of authority "unless it be

such as cannot lawfully be done by deputation." Because of the grave significance of a disciplinary complaint against a physician, we note, as a matter of law, that the authority to sign a disciplinary complaint against a physician simply cannot be delegated.

judgment."); *Biocore Medical Technologies, Inc. v. Khosrowshahi,* 181 F.R.D. 660, 669 (D.Kan.1998) ("[D]efendants argue that [the rules] allow[ ] Butler to sign for local counsel, so long as she authorizes his signature. This position is clearly wrong. . . . If defendants' position was correct, the need for the signature of local counsel would be obviated."); *Bachmann v. Kent,* 293 Ill.App.3d 1078, 228 Ill.Dec. 299, 689 N.E.2d 171, 176 (1997) ("[I]n the instant case, defendant's attorney could not have delegated to her secretary her authority in signing the notice of rejection."); *In re Venezio,* 28 N.J. 580, 147 A.2d 792, 793 (N.J.1959) ("An attorney's obligation [to sign a complaint] under this rule should not be delegated."). *But see Hankin v. Blissett,* 475 So.2d 1303, 1304 (Fla.App.1985) ("[A] pleading signed in the name of the attorney by the attorney's authorized agent is, in effect, a pleading signed by the attorney.").[5]

Insofar as an administrative secretary signed the complaint in the instant case, "the status of the complaint on the date it was [issued] was as though it contained no signature[.]" *Old Hickory Engineering & Mach. Co., Inc. v. Henry,* 937 S.W.2d 782, 786 (Tenn.1996). "The complaint, therefore, was void as of the moment of its [issuance]." *Yones v. Velazquez,* 1989 WL 516423, at*1 (Conn.Super.1989) (unpublished opinion). *See Stewart v. City of Chicago,* 622 F.Supp. 35, 37–38 (N.D.Ill.1985) (striking, *sua sponte,* unsigned amended complaint where neither complaint nor amended complaint were signed); *Housing Authority of City of Hartford v. Collins,* 38 Conn.Supp. 389, 449 A.2d 189, 191 (1982) ("With an unsigned complaint, the process should never have been accepted for filing. There was, therefore, nothing properly before the court over which the court might take jurisdiction."); *Department of Housing Preservation & Development v. Perlongo,* 134 Misc.2d 722, 512 N.Y.S.2d 753, 754 (1986) ("Community Board 9 is listed as the complainant and their complaint form is unsigned. There is no signature at the bottom of the form. . . . Accordingly, the complaint is deemed insufficient on its face to qualify as a 'signed complaint' as required by the Administrative Code."). Consequently, we find the circuit court was correct in reversing the Board's decision because the complaint, for legal purposes, was issued without the required signatures. *See* Syl. pt. 5, *Cable v. Hatfield,* 202 W.Va. 638, 505 S.E.2d 701 (1998) ("Rule 3 of the West Virginia Rules of Civil Procedure requires, in mandatory language, that a completed civil case information statement accompany a complaint submitted to the circuit clerk for filing. In the absence of a completed civil case information statement, the clerk is without authority to file the complaint.").

## C. The Board May Amend its Complaint

█ Although we affirm the circuit court's ruling reversing the Board's decision because of the signature defect, we disagree with the ultimate disposition reached by the circuit court. That is, the circuit court's order did not remand the case to permit the Board to correct the signature defect for the purpose of initiating a new disciplinary proceeding under a properly signed complaint. We believe it was error to fail to dispose of the case in such a manner.

█ The United States Supreme Court has noted that a defect in the signature on a complaint may be corrected " 'by signing the paper on file or by submitting a duplicate that contains the signature.' " *Becker v. Montgomery,* 532 U.S. 757, 764, 121 U.S. 1801, 1806, 149 L.Ed.2d 983, 991 (2001) (quoting Advisory Committee's Notes on Federal Rule of Civil Procedure 11, 28 U.S.C.App., at p. 666). *See Adams v. Perloff Brothers, Inc.,* 784 F.Supp. 1195, 1200 (E.D.Pa.1992) (unsigned pro se complaint deemed filed at time of original filing when signed promptly); *Williams v. Frame,* 145 F.R.D. 65, 66 (E.D.Pa.1992) (same); *Vaccaro v. Kaiman,* 63 Cal.App.4th 761, 768, 73 Cal.Rptr.2d 829 (1998) ("When the defect which justifies striking a complaint is capable of cure, the court should allow leave to amend."). *But*

---

5. It has been noted that "the signature requirement [for a complaint] is not satisfied by a typewritten name." Cleckley, Davis & Palmer, *Litigation Handbook,* § 11(a), at p. 242, (citing, in Supp.2004 *Becker v. Montgomery,* 532 U.S. 757, 764, 121 U.S. 1801, 1806, 149 L.Ed.2d 983, 991 (2001) ("[W]e are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names.")).

*see Wrenn v. New York City Health & Hospitals Corp.,* 104 F.R.D. 553, 556–57 (S.D.N.Y.1985) (denying leave to amend because attorney did not promptly seek to submit a signed complaint). Moreover, an amendment to an administrative complaint that corrects a signature defect may relate back to the original filing date, for statute of limitations purposes. It was said in *Edelman v. Lynchburg College,* 535 U.S. 106, 116, 122 S.Ct. 1145, 1151, 152 L.Ed.2d 188, 199 (2002) that "if [amendment and] relation back is a good rule for courts of law, it would be passing strange to call it bad for an administrative agency." Indeed, some federal courts have held that an unsigned or verified discrimination complaint filed with the Equal Employment Opportunity Commission may be amended so as to relate back to the original filing date. *See Price v. Southwestern Bell Tel.,* 687 F.2d 74, 78 (5th Cir.1982); *Casavantes v. California State Univ.,* 732 F.2d 1441, 1443 (9th Cir.1984); *Peterson v. City of Wichita,* 888 F.2d 1307, 1309 (10th Cir.1989).

In view of the above authorities, we believe the circuit court should have remanded the case to permit the Board to amend the complaint, and to also have permitted the amended complaint to relate back to the date the original complaint was issued, for the purpose of reprosecuting the case-if the Board so chooses.[6] *See Canadian Bank of Commerce v. Leale,* 14 Cal.App. 307, 309, 111 P. 759 (1910) ("[T]he weight of authority is to the effect that the omission of the signature to a pleading ... may be cured by amendment."); *Harris v. Municipal Court,* 123 Colo. 539, 234 P.2d 1055, 1057 (1951) ("While we have not had before us the question of failure to sign pleadings, it has been repeatedly held by the federal courts that failure to sign a pleading, as required by Rule 11, may warrant the striking of the pleading, but will not justify dismissal of the action."); *Eastern Air Lines, Inc. v. Phoenix Sav. & Loan Ass'n,* 239 Md. 195, 210 A.2d 515, 521 (1965) ("[T]he filing of [an] unsigned com-

plaint commenced the action and tolled the statute, and the omission of the signatures ... could be cured by an amendment which related back to the original filing.").

## IV.

### CONCLUSION

We affirm that part of the circuit court's order which vacated the Board's decision. However, we reverse the circuit court's order to the extent it did not allow the Board an opportunity to amend the complaint for the sole purpose of adding the correct signatures. Therefore, this case is remanded to the circuit court with directions to enter an order vacating the Board's decision. Further, this case is remanded to permit the Board to amend the complaint with proper signatures, so that the Board may reprosecute the case in its entirety if it chooses to do so.[7]

Affirmed in part; Reversed in part; and Remanded.

Justice STARCHER concurs and reserves the right to a file concurring opinion.

STARCHER, Justice, concurring.

I concur in the result reached by the majority opinion. I write separately to say why I do not concur in the majority opinion itself.

First, I do not think this case requires the creation of new syllabus points. I believe the *Clark* case, and our general law on jurisdiction, provide sufficient authority to decide the case. This is an example of our Court is unnecessarily making new law—a charge under which this Court too often suffers. In this case, *stare decisis* would suffice.

Second, I cannot subscribe to the reasoning of new Syllabus Point 3, which states:

Under W. Va.Code § 2-2-5 (2002), an administrative secretary is not an agent or deputy to whom authority may be delegated to sign a disciplinary complaint against

---

**6.** We wish to make clear that the Board's revocation/probation decision is unenforceable. However, pursuant to this opinion, it may reprosecute the case pursuant to an amended complaint that is properly signed.

**7.** Should the Board decide to reprosecute this case, it may not rely on the record compiled by the first hearing examiner. A new evidentiary proceeding must take place.

a physician under the West Virginia Medical Practice Act, W. Va.Code § 30–3–1 (2002), *et seq.*

My question is: how and where does this Court find any basis in law for saying that an administrative secretary cannot be designated as an agent to sign a complaint?

The Legislature *clearly* allows agents to sign documents. *W.Va.Code,* 2–2–5 [2002]. Is the majority saying that the Legislature has said somewhere that an administrative secretary cannot be designated as an agent to sign a complaint? I cannot find that the Legislature has said this anywhere.

Or is the majority saying that as a matter of common law or constitutional law neither the Board or the Legislature can designate an administrative secretary as an agent to sign a complaint? On what legal basis can the majority premise such a conclusion? Nothing in the majority opinion addresses this issue.

In my view, neither of these two positions is tenable. My view is that the Board *can* authorize their administrative secretary to sign a complaint as their agent, exactly as the Legislature has authorized in *W.Va.Code,* 2–2–5 [2002].

However, because Dr. Hoover did not participate in the hearings below because there was an admitted uncertainty as to the complaint's validity, I agree with the result of the majority opinion—that the case must be tried again.

Accordingly, I concur.